[ADAMS, ADM'R, &c. *vs.* BARRETT.—The plaintiff in error, having joined issue upon the assignment of errors in this case, with a protestando against the sufficiency and completeness of the bill of exceptions, upon the ground that said bill of exceptions does not contain copies of the several pieces of documentary testimony mentioned therein, and also that the testimony upon interrogatories of the several witnesses who were examined by commission, is not copied into said bill of exceptions.

The Court, upon argument heard, being of opinion that the evidence, as set forth in the bill of exceptions, is sufficient to enable the Court to understand fully and adjudicate correctly, the questions presented by the bill of exceptions; *It is ordered*, that the defendant in error take nothing by his said protestation, and that the same be set aside, and that the cause proceed as though no such protestation had been made.]

No. 46.—JAMES ADAMS, Adm'r of Rose, plaintiff in error, *vs.* N. BARRETT, defendant.

[1.] In Georgia, the person injured is not bound to prosecute the offender to conviction or acquittal, before he is entitled to bring an action for the civil injury, except in cases of treason, and of such crimes as are felonies by the Common Law.

[2.] Such crimes as, by the Common Law, are followed by judgment of forfeiture of lands or goods, or both, are felonies in England.

[3.] Mayhem is not felony at Common Law, except by castration.

[4.] When a contract which is illegal, or opposed to public policy, has been executed, in whole or in part, and the parties are *in pari delicto*, neither a Court of Law nor of Equity will interpose to give relief to either party, but will leave the parties where they find them.

In Equity, Upson Superior Court, tried before Judge Floyd, April Term, 1848.

The facts may be found embodied in the opinion of the Court.

CHAPPELL & HARMAN, for plaintiff.

GIBSON, POE & NISBET, for defendant.

HARMAN, for plaintiff in error, made the following points and relied upon the following authorities :

1st. A deed, the consideration of which, in whole or part, is the compounding or stifling a criminal prosecution for felony, is illegal and void. *Story on Con.* 507. 1 *Story Eq.* 300. 3 *Kelly*, 176.

A Court of Equity will entertain jurisdiction and direct the delivery up, cancellation, or rescission of agreements, securities, deeds, or other instruments which are illegal and void. 2 *Story's Eq.* 5 *to* 12. 1 *Vesey & Beame*, 244. 13 *Vesey*, 581. 11 *Ib.* 535. 6 *Ib.* 417. 1 *Johns. Ch. R.* 520–524. *Drury on Inj.* 10.

Equity will, where discovery is sought as the means of obtaining relief, by delivery up or cancellation of the void instrument, for the purpose of preventing multiplicity of suits, make a decree for the relief sought. 1 *Story Eq.* 80 *to* 90.

Equity will give relief to a party who is *particeps criminis* in the illegal transaction, where the securities or other agreements are repudiated by the party on account of their being against public policy ; that the relief is asked by a *particeps*, is not material in Equity ; the reason is, the public interest requires relief should be given, and is given the public through the party. 1 *Story*, 300 *to* 305. 11 *Vesey*, 535. *Doug. R.* 695, 97, 98. 9 *Vesey*, 292 *to* 298. 3 *Por.* 66 *to* 74, *note* 1. *Cowp.* 790. *Eden R.* 190.

A party cannot sustain an action for a civil injury, until he has discharged his duty to society by bringing the offender to justice on the criminal side of the Court, (for a felony,) and until the offender is tried and either acquitted or convicted, his civil remedy is suspended. *Chitty Crim. Law*, 4. 12 *East*, 409. 2 *T. R.* 751–6. 1 *Hale*, 546. 4 *Bl. Com.* 363. *Bac. Abrdg. Tresp. E.* 2 *Trover, D.*

*By the Court.*—NISBET, J. delivering the opinion.

This bill is filed by the administrator of Rose, and charges, that whilst in life, he had committed mayhem upon the person of the defendant Barrett, that prosecution had been instituted by Barrett, against him for the offence, and that suit for damages had also been commenced—that pending these proceedings, an agreement had been entered into between the parties for the settlement and abandonment of the prosecution—that in consideration of the abandonment of the prosecution, Rose had corruptly agreed to convey to the prosecutor, Barrett, a certain tract of land, and that in pursuance of the agreement, a deed to the land had been executed, and had come into the possession of Barrett, and that an action of ejectment had been brought, and was still pending in favor of Barrett, to recover possession of the land conveyed by the deed. Other matters are charged in the bill, but are not material to the points first to be considered. The bill prays a perpetual injunction of the action of ejectment, and that the deed be delivered up and cancelled. This prayer is predicated upon the assumption, that the contract under which the deed was made to Barrett, is illegal and void, as being against the laws and public policy of the State, in this, that the consideration of said contract was mainly, if not solely, the compounding of a felony. The answer admits the facts generally, as stated in the bill, but denies that the consideration of the agreement was the abandonment of the prosecution, insisting, that the sole consideration was the settlement and dismissal of the civil action. It also states that the deed was duly delivered to the defendant, in pursuance of his agreement with Rose. Upon the trial, a good deal of testimony was introduced, to which it is unnecessary to advert. The errors complained of, grew out of the instructions of the Court to the jury, and his declining to instruct them, as requested by counsel for the plaintiff. The alleged errors in the bill of exceptions, and in the assignment, assume divers forms. They may be reduced to three. The great question in the case, grows out of the charge of the Court, which is in the following words : " Even admitting that you are of opinion that said deed was undoubtedly founded in part, or in the whole, upon a bad or illegal consideration, to wit : upon the consideration of

compounding, abandoning, or stifling the said criminal prosecution; still, neither Rose, nor the complainant, his administrator, could upon such ground, maintain a Bill in Equity, to set aside such deed. The principle which governs in such cases, is, that Courts of Equity will not interfere actively, in favor of either party—neither in favor of the party executing the deed to set it aside, nor in favor of the party to whom it was executed to enforce it—that the Court will leave the parties as it finds them, as being both equally participants in the crime, and will not interfere to set aside the consequences which spring out of that crime, and are tainted thereby." To this charge the plaintiff excepted. The other two points spring out of the following request of counsel for the plaintiff, to wit: "that the Court instruct the jury, that if they believe that the only consideration for the deed, was the settlement of the civil suit or suits; still, said consideration was bad and illegal, because by law the defendant, Barrett, was not entitled to bring and maintain his said suit, or suits for the civil injury, until he had prosecuted to an end, the indictment for mayhem. And if it was contrary to law and to the policy of law, to permit a party in a case like the one before the Court, to maintain a civil action for damages before prosecuting the criminal offence to an end; it was equally contrary to the policy of the law, and illegal, to permit him, after having brought such inadmissible civil action, and settled the same for a stipulated compensation, to recover by the aid of law, the property or money which was the price of such settlement; and Equity, as well as law, will aid in preventing such a recovery, by setting aside the agreement, or deed on which such recovery was sought to be had, or the property sought to be conveyed."

The Court declined to give any direct charge upon this request, upon the ground that any such charge was unnecessary and uncalled for by the pleadings, and to this refusal the plaintiff excepts, maintaining, that such a charge was called for by the pleadings, and maintaining the doctrine as expressed in the request. The Court, however, did instruct the jury, that if the law was, as claimed by the counsel for plaintiff in the above request, still it would not affect the decision of the case, because, upon that supposition, Rose and Barrett were parties to a settlement and conveyance, founded on an illegal consideration, and the Court would not interfere in favor of Rose, to set aside a conveyance, however

illegal, in which he and Barrett were equally participants in an illegal and inadmissible transaction. To which charge the plaintiff also excepted.

I shall consider these questions in the inverse order in which they are here presented. The last charge of the Court, which gave rise to the last exception, goes upon the assumption that the law is as stated by counsel for the plaintiff in his request. The proposition is, that a person injured by mayhem, is not entitled to sue for the civil injury, until he has prosecuted the offender to conviction or acquittal on the criminal side of the Court. Concede this to be true, then, says the Court, Barrett having sued Rose for damages, before prosecuting him to conviction or acquittal, and they having agreed to settle the civil suit, are equally participants in an illegal transaction, and the Court will not lend its aid to Rose to set aside a conveyance made by him to Barrett, in consideration of such settlement. This proposition of the Court is not the same with that stated by the counsel for the plaintiff. The counsel, after stating in his request, the rule of law, to wit: that Barrett, the person injured, is not entitled to sue civilly, until he has pursued the criminal prosecution to an end, proceeds to state, that if he does so sue, and compounds the civil suit, it is against the law and the policy of the law to permit *him*, (Barrett,) to recover by the aid of the law, the property or money which was the price of such settlement or compounding; and he farther proceeds to state, that Equity will aid in preventing such recovery, by setting aside an agreement or deed made in pursuance of such settlement. The counsel, we think, has correctly apprehended the law, as applicable to just such a settlement as the one supposed, and the Court has misapprehended it. If such a contract be void, (and it unquestionably would be upon the assumption granted,) for what reason is it void? Because it is founded on a consideration, (to wit: the settlement of an illegal suit,) which contravenes public policy. The deed in this case, to be more specific, is void, because procured by Barrett by his own violation of a legal duty, and by his own violation of public policy. Against the law and against his legal duty he has sued for damages, before prosecuting Rose to the end. The illegal suit is the consideration of the compromise, or I should rather say, the consideration grows out of the illegal suit. The deed is the fruit of his illegal act. Now, I think it clear, that if he proceeds at Law

to make that deed available, he would be successfully met by a de-fence, that the deed is void. It is equally clear that Equity will not aid him to enforce it. It is a conceded point, I apprehend, that Equity will not lend her aid to enforce securities against law and public policy. See *Howell, administrator, &c. vs. Fountain and others,* 3 *Kelly,* 176.

This, too, seems to me to be one of the cases in which Equity would interfere at the instance of Rose, to set aside this deed, be-cause he is not with Barrett, equally a participant in an illegal transaction. They are not *in pari delicto.* And it is upon the idea that they are, that I think the Court has erred. In what does the violation here, of the law consist? It consists in the sueing out of the action for damages against Rose, before prosecuting him to conviction or acquittal. Rose is no party to this transaction. It is done without his co-operation and against his consent. He has nothing to do with the guilt or crime of the suit. As to *that* he is an innocent man. If a fraudulent combination with Barrett to defeat public justice, by suppressing a prosecution, by sueing on the civil side of the Court, and by then compromising the civil ac-tion, were proven, then the case would be very different. *Then* Rose would be *in pari delicto.* But very different is the case. No such collusion is proven or can be inferred. From the illegal act of Barrett springs the deed. His own violation of a legal du-ty, is the basis of the settlement. The consideration of the deed is the abandonment of a suit brought without authority of law, by Barrett against Rose, not only without the consent of the lat-ter, but we are obliged to conclude, decidedly against his will. Rose, it is true, violated the law in committing the mayhem, but that offence does not enter into this transaction, For that he is accountable, wholly irrespective of this transaction. The settle-ment of the civil suit does not estop even Barrett from prosecu-ting him—certainly nobody else. How can he be said to be equal in crime with Barrett? How different is such a transac-tion from the compromise of a felony? There both parties unite to defeat the criminal justice of the State. There both parties com-bine to stifle a prosecution, which is not only lawful, but which it is the duty of one party to push to a conclusion. *Here* all that can be said of Rose, is, that he buys his peace from the conse-quences of an unauthorised civil suit. If it be said that crime at-taches to him in the settlement, because he was at first guilty of

a violation of law, in perpetrating the mayhem, I reply, I see not how that offence can be connected with this subsequent and independent transaction. But if in this way guilty, to what extent? Surely not *equally* with Barrett. Suppose that in this case, (according to the assumption,) Rose had filed his bill to set aside this deed. Then the case would fall exactly within one of those classes of cases, where, Mr. Story says, Equity will interfere to set aside securities. Equity, says Mr. J. Story, will cancel agreements and other securities :

1st. Where there is actual fraud in the party defendant, in which the party plaintiff has not participated.

2d. Where there is a constructive fraud against public policy, and the party plaintiff has not participated therein, &c.  " The two first classes of cases seem scarcely to require any illustration. Since it is manifestly a result of natural justice, that a party ought not to be permitted to avail himself of any agreement, deed or other instrument, procured by his own actual or constructive fraud, *or by his own violation of a legal duty or public policy*, to the prejudice of an innocent party." 2 *Story's Eq. Ju. secs.* 695, 695 *a*. So that upon this point, which is really an abstract point, we think the Court was wrong.

The counsel for the plaintiff asked the Court to instruct the jury, that a person injured by mayhem, is not entitled to sue for the civil injury, until he has prosecuted the offender to conviction or acquittal. This position was preliminary to the farther charge desired, and necessary to it. The farther charge, as we have seen, the Court gave, upon the supposition that counsel was right in the above position, declining to give any opinion upon that position, because not made necessary, and not called for by the pleadings. We do not see that the whole, or any part of the desired charge, was made necessary by, or fairly grew out of the pleadings. The complainant's prayer for the cancellation of the deed, is founded on the fact, as charged in the bill, that the consideration of the deed was the abandonment of the prosecution, and on that alone. The bill presents no such point as the one propounded by the counsel, nor does the answer. It is the duty of the Court to instruct the jury, when requested, upon any point which is fairly made by the pleadings, or which appertains to the issues made. But it is no part of his duty to give opinions upon what are termed abstract questions of law, such as do not spring

legitimately out of the case.    If it was, then might the circuit
Judge be made amenable in each case, upon the whole science of
the law, and this Court become at one sitting, a revisory tribu-
nal over all its alleged errors and imperfections.    In declining
to charge, we do not think the Court erred.    But in as much as
this question was argued, and as counsel expressed a wish that the
opinion of this Court should be had upon it, we are content to
depart in this instance, from the usage of the Court, with a pro-
test against the departure becoming a precedent.

[1.] By the Common Law, in every case of *treason and felony*, the
civil remedy of the person injured is entirely suspended until he
has endeavored to bring the offender to justice.    The civil reme-
dy is not destroyed or merged.    For after the offender is con-
victed, or acquitted without collusion, he may support an action
for the same cause as that on which the prosecution was foun-
ded.    12 *East*, 409.    1 *Hale*, 546.    4 *Bla. Com.* 363.    2 *T. R.*
751.    1 *Chitty's Crim. Law.*  5 *Bac. Ab. Trespass E. 2, and Tro-
ver D.*

The reason of this rule is found in public policy in the
necessity of bringing offenders to justice.    The law makes it
the interest as well the duty of the individual most affected by
the violation of the Penal Law, to prosecute, and thus seeks to
insure its enforcement.    The rule is a salutary one, and it is very
desirable that our Legislature should extend it to all offences
made felony by our Statute, and to offences against the persons
of slaves.    It is unfortunately but too true, that men are content
with a pecuniary compensation, and if they can get that, care
comparatively little about the punishment of the wrong doer.
The Common Law rule applies to *treason and felony* only.    There
is no repeal of the Common Law in this particular in Georgia, so
far as we are informed.    So far, then, as concerns all offences in
Georgia, which were felonies at Common Law, we hold that the
civil remedy of the person injured is entirely suspended, until the
felon is prosecuted to conviction or acquittal.    The inquiry,
then, is first what constitutes offences, felonies, by the Common
Law, and secondly, was this offence, to wit : mayhem, a felony at
Common Law ?    If it was not, then Barrett, the person injured,
was entitled to maintain his civil suit against Rose, before prose-
cuting him to conviction or acquittal.

[2.] Without being curious as to the meaning and derivation

of the word *felon*, or stopping to detail the learning as to its origin, of Prateus, Calvinus, Sir Edward Coke and the rest, more profound than profitable, I adopt the view of Blackstone, taken from Sir Henry Spelman, to wit: that it is of feudal origin, and is derived from two northern words, *fee*, which signifies the fief or feud, and *lon*, which signifies price or value. "*Felony*, therefore, is the same, (says Blackstone,) as *pretium feudi*, the consideration for which a man gives up his fief; as we say, in common speech, such an act is as much as your life or estate is worth. In this sense it will clearly signify the feudal forfeiture, or act by which an estate is forfeited, or escheats to the lord." 4 *Bla. Com.* 95. It is in this way that the learned commentator arrives at his definition of felony. His reasoning, however, is at fault in one particular, for that would imply that nothing is a felony, but that which works a forfeiture of lands. His definition, notwithstanding. is this, " an offence which occasions a total forfeiture of either lands or goods, or both, at the Common Law, and to which capital or other punishment may be superadded, according to the degree of guilt." 4 *Bla. Com.* 94, 5. *Forfeiture of land or goods, at the Common Law is, therefore, the test of what is felony, and to this, the books very generally assent.* 1 *Russel on Crimes,* 44. 1 *Hawk. c.* 25, *s.* 1. 2 *Hume, App.* 11, *p.* 129. *Spelm. Gloss. Felon.*

[3.] We are now prepared for the enquiry, is mayhem a felony? At Common Law, it was not, unless by *castration.* It was at one time of the degree of felony at Common Law, as the judgment was *membrum pro membro* according to the *lex talionis.* 3 *Inst.* 118. 1 *Hawk. Pls. of the Crown c.* 55, *s.* 3. 4 *Blac. Com.* 206. 1 *Russel on Crimes,* 719. This judgment went out of use, because the law of retaliation was found an inadequate rule of punishment, and because, upon a repetition of the offence, the punishment could not be repeated. The offence has been considered in later times, as in the nature of an aggravated trespass, and the only judgment which now remains for it at Common Law, is fine and imprisonment. 1 *Russel on Crimes,* 719. 4 *Blac. Com.* 206. 1 *Hawk. P. C.* 112. 1 *East, P. C. c.* 7, *s.* 1, *p.* 393. That mayhem by castration was considered felony, see 4 *Blac. Com.* 206. *Brac. Fol.* 144. For mayhem at Common Law, there is no judgment of forfeiture, either of lands or goods, and therefore it was not at Common Law a felony, and not being a felony at Common Law, it is not one of those offences for which,

in Georgia, it is necessary for the injured party to prosecute the criminal to conviction or acquittal, before he is entitled to his action for damages.

At different times, by Statute in England, different kinds of mayhem were made felonies—as cutting out the tongue, or putting out the eyes, by *Statute 5 Henry IV.* Cutting off the ear, by *Statute 37 Henry VIII.* and by *Statute 22 and 23, Car.* 2, known as the Coventry Act. Previous Statutes were modified or repealed, and it was made felony to cut out or disable the tongue, put out an eye, slit the nose, cut off a nose or lip, or cut off or disable any limb, or member of any other person, with intent to maim or disfigure him.

These acts were again modified or repealed by the later Statutes of the 7 *and* 8 *George IV.* and 9 *of George IV.* which were themselves superseded by the Act of 1 *Victoria, ch.* 85. So that the Statute Law of England, as to mayhem, is now to be found, substantially, in the Act of 1 *Victoria.* None of the British Statutes upon this subject, passed anterior to our adopting Statute, are in force in Georgia, being superseded by our own code, which defines with minuteness what shall constitute mayhem, and prescribes its punishment. By our Act defining felony, as used in the Penal Code, mayhem is a felony. But this definition does not in any way affect the rule I am considering. That rule has application alone to *treason and felony,* and such crimes only are felonies, as by Common Law are followed by judgment of forfeiture. Our Statute makes a number of crimes felonies which were not felonies at Common Law. Mayhem is one of them. It does not thereby bring mayhem under the rule, for the rule requires a prosecution before the injured party can maintain a civil action, only of such offences as were felonies at Common Law. Mayhem is not a felony at Common Law, except in the one instance stated. So far as our Statute defining felony covers the same crimes that were felonies at Common Law, it affirms the Common Law ; hence, we say, that in Georgia, offences which were felonies at Common Law, must be prosecuted to an end, before the person injured thereby can maintain his civil action. *For the Act of* 1 *Victoria, see* 1 *Russel's Criminal Law, fifth Am. Ed. p.* 721, 722. *For the Georgia Statutes, as to mayhem and felony, see Prince,* 624, 625, *and* 621.

[4.] I proceed now to the consideration of the main question.

The Circuit Judge charged the jury, that if they believed that the deed was founded, in part or in whole, upon a bad or illegal consideration, to wit, the compounding of a felony, the complainant could not maintain a Bill in Equity, to rescind it—that the principle which governs in such cases is, that Equity will not interfere in favor of either party, neither in favor of the party executing the deed to set it aside, nor in his favor to whom it was executed to enforce it, but will leave the parties as it finds them, because they are in *pari delicto.* These positions we think incontrovertible. The Court goes upon the idea that this contract was executed by the delivery of the deed, and I proceed to show that it was executed, and if not fully executed, yet in part. That the delivery of the deed was to that extent an execution of the contract. We think it was fully executed, but if only in part executed, that will be sufficient to sustain the judgment of the presiding Judge. We advert to the record to show what the contract was, and whether it was executed. It is not necessary to look to the evidence to determine whether the deed was executed in consideration of the abandonment of the prosecution—the evidence as to that is somewhat conflicting. Whether it was or not, was left to the jury to find. The opinion of the Court goes upon the supposition that the consideration of the deed was the composition of the felony. The bill, and the answer, and the testimony, agree that it was stipulated between the parties, that the suits instituted by Barrett against Rose, for the injury done the former, should be settled,(whether *the suits* include the criminal prosecution it is not necessary for me to inquire,) that in consideration of such settlement, Rose was to convey to Barrett certain lands, with certain guaranties, and Barrett was to give to Rose a statement in writing that the suits were settled and abandoned. (There is conflict as to the character of this statement, and as to whether the undertaking to give it was before or after the delivery of the deed, but that is not important.) And that *in pursuance of the understanding,* the deed to the lands was delivered to Barrett, and the statement given to Rose. The negotiations and the consummation were conducted by agents of the parties. Now, here is a contract in the first instance, touching the settlement of these suits, which is executory. "An executory contract, (says Marshall,) is one in which a party binds himself to do or not to do a particular thing." *Fletcher vs. Peck,* 6 *Cranch,* 136. The obli-

gations of the parties are reciprocal.   Each has something to do, and one agrees not to do certain things.   Barrett is not to prosecute the suits, and is to give a statement as evidence of such abandonment, and Rose is to execute, in consideration thereof, a conveyance to Barrett of certain lands.   Each did what each assumed to do.   The contract was, therefore, executed.   Nothing remained for either to do.   "A contract executed, (says the same great authority, in *Fletcher vs. Peck*,) is one in which the object of the contract is performed."   Here the objects of the contract are performed.   We think it was fully executed, and if not fully executed, then as to the execution and delivery of the deed, *pro tanto*, it is executed.   The only reply to this view of the subject, made by counsel, was, that the undertaking on the part of Rose *to convey,* is not complete until possession of the land is given. The old doctrine of corporal investiture, &c., has no force now, and a deed is a seisin in law.   A deed is a contract executed. Even if not recorded, it passes the title, as against the grantor, his heirs and devisees.   4 *Kent*, 456.   The Supreme Court of the United States have determined that a grant from the State is a contract executed.   They say; "a grant, in its own nature, amounts to an extinguishment of the right of the grantor, and implies a contract not to re-assert that right.   A party is, therefore, always estopped by his own grant."   *Fletcher vs. Peck*, 6 *Cranch*, 136.   In the case of the *Inhabitants of Worcester vs. Eaton*, this point is expressly adjudicated.   "A deed of bargain and sale, (says Parker, C. J.) signed, sealed, and delivered, acknowledged and recorded, is an actual transfer of the land to the grantee, as much as the delivery over of a sum of money, or of a personal chattel, is a transfer of either of those."   11 *Mass.* 373.   It is therefore taken as a postulate, that the contract was execu-ed.

It will also be conceded, that a contract for compounding a felony is illegal and void, both because it is forbidden by Statute, and because it is immoral, and opposed to public policy.   *Prince*, 641.   *Collins vs. Blanton*, 2 *Wils.* 347.   3 *Scott*, 607.   3 *Bing. n.* 330.   3 *B. & P.* 167.   5 *East*, 294.   16 *Mass.* 91.   4 *Mass*, 373. 9 *Vermont*, 23.   2 *Southard*, 470.   13 *Wend.* 592.   1 *Bay*, 249. *Powell*, 186.   3 *Burrow*, 1675.   *Story on Contracts*, 128, 129.

Nor does it admit of a doubt, that neither party can go into a Court, for the enforcement of such a contract.   The contract being executory, neither party can be heard.   Neither Courts of Law

nor of Equity, as a general rule, will give relief. So soon as it is made to appear that the contract is illegal, whether by the plaintiff, or in defence, the Courts will turn the parties from their doors. Defence against such a contract is not allowed, through any regard to any rights of the defendant; the law has as little respect for him, when he is *in pari delicto,* as for the plaintiff. The defence is allowed, that through him the public policy may be subserved. The defendant comes into Court with a miserable grace, alleging his own violation of law, or public morality, or of the policy of the law, and he is to be heard, only as an instrument, by which to work out the ends of that policy. And where either party, as Lord Mansfield phrases it, *by accident, as it were,* is in the position of defenant, it is better for him. " *Potior est conditio defendentis.*" The case of *Howell, Admr. vs. Fountain and others,* decided by this Court, was a proceeding in Equity, to enforce an illegal contract. In that case, the principles which govern such proceedings, are briefly, but fully developed, as well as those, to some extent, which apply to this case. Upon this head, therefore, of this discussion, I refer to that case, and the authorities there cited. 3 *Kelly,* 176. That case, it is true, cannot be considered as a controlling authority in this, for this is not the case of a party who comes into Court to enforce an executory contract. Here a party, having executed his part of an illegal contract, invokes the aid of Chancery to revoke that execution, and by annulling the contract to place him in the position which he occupied before he entered into it. The principle which governs this case is this— if a contract is in violation of law, or of public policy, and the parties to it are *in pari delicto,* and it is executed, neither a Court of Law nor of Equity will interfere to relieve them, but will leave them where it finds them. I apprehend, that upon a careful review of the authorities, this rule will be found almost without an exception. Those cases which appear to be exceptions—cases where Equity, with a view to public policy, will interpose to set aside securities founded upon illegal considerations, will be found to be cases, where the contract either remains executory, or the parties are not *in pari delicto.* If the contract be executed, and the parties are equal in crime, the conclusion of the law is, that public policy is best promoted by non-intervention. I propose to test the truth of this rule by authority, first at Law. Whether the contract be executed by the payment of money, or

Adams *vs.* Barrett.

the delivery of goods, or the delivery of securities, the principle is the same. He can never recover either back again. Buller writes as follows: " Where one knowingly pays money upon an illegal consideration, he is *particeps criminis*, and there is no reason he should have his money again, for he parted with it freely, and *volenti non fit injuria.* In such case, *melior est conditio defendentis*, not because the defendant is more favored, but because the plaintiff must draw his justice from pure fountains. Therefore, though if A agree to give to B money for an illegal act, as if a wager be made on a boxing match, B cannot (though he do the act) recover the money by an action; yet if the money be paid, A cannot recover it back again." *Buller's N. P.* 131, 132. Here is the whole doctrine fairly stated, If the contract be executory, the parties cannot sue to enforce it—if executed, they are left as they are found. The case of *Collins vs. Blantern*, is a leading case at law. Wilmot, C. J. lays down the rule in these words: "All writers upon our law agree in this, no polluted hand shall touch the fountains of justice. Whoever is a party to an unlawful contract, if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a Court to fetch it back again. You shall not have a right of action when you come into a Court of Justice in this unclean manner, to recover it back." And with fervid indignation, the learned Judge exclaims : " *Procul O! Procul este profani.*" 2 *Wils.* 350. In *Howson vs. Hancock, Lord Kenyon* said: " But there is no case to be found, where, when money has actually been paid, by one of two parties *to the other*, upon an illegal contract, both being *particeps criminis*, an action has been maintained to recover it back again." 3 *T. R.* 577. In *Holman vs. Newland, Lord Mansfield* is thus reported : " The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this ; *ex dolo, art non oritur actio.* No Court will lend its aid to a man who founds his cause of action upon an illegal or immoral act. If, upon the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa*, or a transgression of a posi-

tive law of this country, there the Court says he has no right to be assisted. It is upon that ground the Court goes—not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So, if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it. For, where both are equally in fault, *potior est conditio defendentis.*" *Cowper*, 192. The leading case of *Browning vs. Morris*, is to the same effect, to which I shall have occasion to refer, with a view to another distinction. *Cowper*, 417. From these, the very highest English authorities, (and they might be multiplied almost *ad libitum*,) I consider the principle settled there, that a Court of Law will not disturb an illegal executed contract. The American decisions, almost without variation, have followed those of Great Britain. I select one or two only, because of their pertinence to this case. The case of *Denton and wife vs. English*, tried before the Constitutional Court of South Carolina, was trover for the recovery back again, of negroes given by bill of sale and delivery of possession to a woman, in consideration of future illicit cohabitation. The Court denied the right of recovery, holding the contract, when executed, binding upon the donor, although it was against law, good morals, and public policy. In that case, the distinction is taken distinctly, between executory and executed contracts, Such contracts may be avoided by plea, when executory, and attempted to be enforced, but are to remain intact when executed. There are exceptions, such as usury contracts, under Statutes, noted by the Court. Mr. Justice Johnson, delivering the opinion of the Court, however, says : " After a careful research, I have not been able to find a single exception in cases arising on Common Law principles, to the general rule, that when parties are *in pari delicto, melior est conditio possidentis*. And no possible case occurs to my mind, which would constitute an exception." 2 *N. & McC.* 581. The next case which I quote, is *Inhab. of Worc. vs. Eaton*, determined by the Supreme Court of Massachusetts. It is the case of a contract for compounding or preventing a prosecution for larceny, *executed* by a payment of land in the *delivery of a deed*. It is, in every principle involved, *the case* I am now discussing. The question made in that case was, whether the grantor could avoid her own deed, given for the consideration stated, by an entry, so as to give effect to a sub-

sequent deed made by her, *bona fide,* and for a valuable conside-
ration. The Court, upon the principles which I have herein in-
sisted upon, ruled that she could not. Parker, C. J. said, after a
review of the authorities, " if then, the composition of a felony or
larceny is an illegal consideration of any promise or obligation
for money, the party claiming under such instrument, cannot en-
force it in a Court of Justice, nor can the other party, if he has
paid it, recover it back again." . The Chief Justice then notices
a distinction sought to be made by counsel, between the payment
of money under such a contract, and the conveyance of land, and
declares *that there is no foundation* for it ; holding that a *deed* is
an actual transfer of land, as much as the delivery of a sum of
money, or of a personal chattel, is a transfer of either of those.
11 *Mass. R.* 369. In support of the rule that a Court of Law
will not interfere with an illegal contract executed, I refer to
the following authorities : *Buller's N. P.* 131, 2. 2 *Wils.* 347.
6 *D. & East,* 61. 7 *Ibid,* 535, 630. *Doug.* 470, 697. *Cowp.* 191.
*Cowp.* 418. 1 *East,* 94. 1 *Com. on Cont.* 30, 46. 2 *Ibid,* 109.
*Powell on Contr.* 1 *Vol.* 200. 4 *T. R.* 664. 2 *Inst.* 391. 7
*Bing.* 98. 10 *B. & C.* 684. 1 *Wheat. Selwyn,* 94, 5, *note,* 5*th Am.*
*Edit.* 2 *Bing.* 250. 8 *T. R.* 575. 4 *Taunt.* 165. 3 *T. R.* 266.
6 *M. & S.* 290. 4 *Ibid,* 16. 3 *Bos. & Pul.* 35. 8 *J. R.* 147. 11
*Mass.* 368. 10 *Ibid,* 267. 4 *Peters R.* 184. 2 *N. & McC.* 581. 9
*Vermont R.* 310.

Some of the authorities in terms sustain the distinction be-
tween contracts executory and executed. For caution's sake, I
repeat, that by drawing this distinction, I am not to be understood
to say that the Courts will aid in the *enforcement* of an illegal con-
tract. I mean to say, that if the contract be executory, and it
appear by the plaintiff's case, or the defence, that it is illegal or
opposed to public policy, the plaintiff will be turned away, and
it is virtually annulled in favor of the defendant, for the promo-
tion of public policy. But if it be *executed,* then in no form, in
favor of neither party, will the Courts disturb the *status* of the par-
ties. Mr. Powell thus recognizes the distinction, " although con-
tracts or agreements respecting things which the law prohibits to
be the subjects of contracts, create no rights, and consequently no
obligations on either side, yet the law suffers them in .some in-
stances nevertheless, after they have been carried into execution,
to prevail contrary to its prohibition ; for being executed, they

are valid between the parties, although the law will not give its aid to assist either party in carrying them into execution; for the parties are looked upon to treat together, as if there were no law about the matter, and so to renounce the benefits which might accrue by the law to either of them; and therefore, though they do ill to engage themselves, they ought, in conscience, to suffer their engagements, being executed, to continue in force, and neither of them to break without the assent of the other." 1 *Powell Cont.* 200. 2 *Comyn on Con.* 109. Such is this author's idea of the philosophy of the " *melior conditio possidentis.*" So in cases involving no moral turpitude, and the contract is executory, and the event has not happened upon which money is to be paid, the Courts have recognized the right of the party, upon notice, to repudiate it. By *Buller, in Lowry vs. Bourdieu,* 2 *Doug.* 470. By *Ld. Mansfield, in Walker vs. Chapman and Walter, Loft's R.* By *Sir James Mansfield, in Auburt vs. Welsh,* 3 *Taunt.* 283. By *Lord Alvanly, in Tappanden and others vs. Randall,* 2 *Bos. & Pul.* 470. See also, 1 *W heat. Selw.* 94, '5, *note.*

I come now, to show that the cases at Law, (and as we shall see, in Equity,) which seem to constitute exceptions to the general rule I have laid down, are not in fact exceptions, but are cases in which the parties are not *in pari delicto.* One exception, it is said, for example, is found in usurious contracts; an action lying in favor of the borrower, to recover back money paid as usurious interest. Upon usurious contracts the parties are not equal in crime. This matter is set at rest by Lord Mansfield, in two cases, to wit, the cases of *Smith vs. Bromley, Douglass,* 696, and *Browning vs. Morris,* 2 *Cowp.* 790. In the latter case, his Lordship says, "the rule is *in pari delicto potior est conditio defendentis,* and there are several other maxims of the same kind. When the contract is *executed* and the money paid *in pari delicto,* this rule certainly holds, and the party who has paid cannot recover it back. For instance, in bribery, if a man pay a sum of money by way of bribe, he can never recover it in an action, because, both the plaintiff and the defendant are *equally criminal.* But when contracts are prohibited by positive Statute, for the sake of protecting one set of men from another set of men; the one from their situation and condition, being liable to be oppressed or imposed upon by the other, *there* the parties are not *in pari delicto,* and *in furtherance of these Statutes,* the person injured, after the

transaction is finished and completed, may bring his action and defeat the contract." He illustrates, in the case of the Statutes of usury, and says, "these Statutes were made to protect needy and necessitous persons from the oppression of usurers and monied men, who are eager to take advantage of others, whilst they, on the other hand, from the pressure of their distress, are ready to come into any terms, and with their eyes open, not only to break the law, but complete their ruin." Now, what I wish to be understood, is, that such are the cases, and such only, (where the parties are not *in pari delicto,*) in which money or any thing else, paid upon contracts illegal and against public policy, can be recovered; and that it is only to promote the policy of *such Statutes*, that Equity will interfere, (upon the score of public policy,) to cancel securities. The case of Barrett & Rose, is not one of these cases ; for they are *equal in crime*, on a contract forbidden by law, immoral and opposed therefore to public policy. See also, 1 *Story's Eq. Juris. sect.* 302. *Bosanquet vs. Dashwood, Cas. Temp. Talb.* 39. *Rawden vs. Shadwell, Ambler*, 269, and *Mr. Blount's notes.* 1 *Fonbl. Eq. b.* 1, *ch.* 4, *sect.* 8, *note* 12. 2 *Vesey*, 156. 18 *Vesey*, 379. 11. *Mass.* 368.

The plaintiff in error, however, plants himself upon equitable grounds, and says : First, Equity will upon principles *quia timet*, cancel bonds, notes and other securities. Now this ground of Equity jurisdiction is not questioned. But the principles upon which that jurisdiction is founded have, I think, nothing to do with securities founded upon an illegal or immoral consideration, and therefore nothing to do with this case. Those principles refer to cases, where a *deed* (for example) void for fraud, or which, being originally valid, has become *functus officio*, from any cause which renders it legally invalid, constitutes a cloud upon the plaintiff's title ; in such case, upon a proper case made, Equity, in the exercise of a preventive justice, will decree its cancellation. *Story's Eq. sects.* 701, *to* 706. 3 *Kelly*, 423.

Secondly, the counsel say, although Equity will not aid a party to enforce an illegal contract, yet upon the ground of public policy, it will allow one who is *in pari delicto* to be relieved when he comes into Equity to repudiate his contract. I might in reply to this proposition, refer to the doctrines herein held upon this subject, in Courts of Law. Is there any reason, why equity in this matter should grant relief greater and different from that

which law affords? Is there any reason of policy, why equity should in this particular transcend the powers of a Court of Law? The principles of Law, of Equity and policy, must be the same as to this question, in both jurisdictions. To my mind, this is an instance where the maxim, *equitas sequitur legem*, applies with controlling force.

But is this an application to repudiate a contract? If I am right in the conclusion that it is an executed contract, then it is not, but it is an application to relieve against the consequences of a contract consummated and extinct, and to be placed back, by the strong arm of Chancery, to the condition the plaintiff was in before he made the contract. In cases where repudiation is allowed, the repudiation must be asked before the party has put himself without the repudiation limits, by performing the contract. In other words, so far as the position of counsel is at all sound, it applies to contracts that are still executory, or to such as those in which the parties are not *equal*, as to crime. Equity will no more interpose to disturb an illegal executed contract, than will Law; it will leave the parties as it finds them, if they are *in pari delicto*. I venture to say, that in the whole range of the modern English and American Chancery decisions, there is not to be found one single case, where that Court has rescinded a deed, or re-called money or property, at the instance of a *particeps criminis*, paid on a contract for compromising a felony—not one. Neither upon the ground of public policy, nor any other ground. The doctrine contended for by the able counsel for the plaintiff in error, *does not extend to the repayment of money, or any thing else paid on the contract*, except in case of usury contracts, and such as occupy a like position, as I shall now proceed to show. Judge Story lays down the general rule as follows: " In general, (for it is not universally true,) where parties are concerned in illegal agreements, or other transactions, whether they are *mala prohibita*, or *mala in se*, Courts of Equity, following the rule of Law, as to participators in a common crime, will not, at present, interpose to grant any relief, acting upon the known maxim, " *in pari delicto potior est conditio defendentis, or possidentis*." *Story's Eq. Jurisp. sect.* 298. In a note to this rule, as laid down in the text, Mr. Story has this remark—" the old cases often gave relief, both at Law and in Equity, where the party would otherwise derive an advantage from his iniquity. But the modern doctrine has

adopted a more severely just, and probably moral and politic rule, which is to leave the parties where it finds them, giving no relief and no countenance to claims of this sort." Mr. Story states, in parenthesis, as above, that the general proposition is not universally true, and illustrates the exception by reference to usurious contracts; recognizing the doctrine of Lord Mansfield, in *Smith vs. Bromley, and Browning vs. Morris.* The exceptions, therefore, to the general rule, in Equity as well as at Law, grow out of cases where the parties *are not in pari delicto.* He (Mr. Story) then proceeds to lay down the proposition upon which the plaintiff in error relies, as follows: " But in cases where the agreements or other transactions are repudiated on account of their being against public policy, the circumstance that the relief is asked by a party who is *particeps criminis,* is not in Equity material. The reason is, that the publc interest requires that relief should be given, and it is given to the public through the party. And in these cases, relief will be given, not only by setting aside the agreement or other transaction, but also, in many cases, by ordering a re-payment of any money paid under it." Now, in the light of the rule established at Law, and of what Mr. Story says himself is the general rule, and what he also refers to as the exceptions, I inquire what *public policy has* he reference to? The answer is, to that public policy which Lord Mansfield explains as growing out of the Statutes of usury, and like Statutes. And what *are the cases* in which Equity will grant relief by ordering the re-payment of money? Why, *the cases* growing out of such Statutes. It is not questioned but that usurious interest paid, may be recovered back again. This view of the text of Story is confirmed by his immediately following comments upon the doctrine of Lord Thurlow. That Chancellor had held, that *in all cases* where money had been paid for an illegal purpose, it might be recovered back; arguing that if Courts of Justice mean to prevent the perpetration of crime, it must be, not by allowing a man who has got possession, to remain in possession, but by putting the parties back to the state in which they were before. Mr. Justice Story denies this doctrine, and reasons cogently against it, and says, " this is pushing the doctrine to an extravagant extent, and effectually subverting the maxim *in pari delicto melior est conditio defendentis.*" It must be conceded that Mr. Story is a little confused upon this subject. For, he still farther adds, " relief is not granted where both parties

are *truly in pari delicto, unless* in cases where public policy would thereby be promoted." It is much to be regretted that he had not explained more perspicuously, what are the cases in which public policy requires the relief to be granted. That he had reference to that class of cases spoken of by Lord Mansfield, in *Bromley vs. Smith and Browning vs. Morris*, as not being cases where the guilt of the parties is equal, is proven in this, that those are the very Common Law authorities which he quotes to sustain his text. But if he intended to say, that relief would be granted in other than that class of cases, I am satisfied that it can only be done whilst the contract is unexecuted. The cases referred to by Mr. Story from the Equity Books are, so far as I have been able to examine them, cases of unexecuted contracts. For the general rule, to-wit: that where parties to a contract, illegal or immoral, are *in pari delicto* Courts of Equity will not interpose, but leave the parties where they find them, according to the maxim *in pari delicto potior est conditio defendentis et possidentis*, See 1 *B. Ch. R.* 543, '7, '8. *Jacob R.* 67. 3 *Vesey, Jr. R.* 612. 5 *Vesey*, 173, 181, 184. 7 *Ib.* 469. 11 *Ib.* 168. 18 *Ib.* 379. *Cas. Temp. Talb.* 37. 10 *Vesey*, 366. *Ambler*, 269. 3 *A. K. Marsh.* 475. 4 *Wash. C. C. R.* 297. 2 *Wash. C. C. R.* 98. 11 *Wheat.* 258. 7 *Paige*, 654. 4 *Porter*, 294. 2 *Stewart*, 175.

In the case in 4 *Porter*, 294, the Supreme Court of Alabama expressly rule, that exceptions coming under the general rule, are cases founded on contracts violative of usury and gaming laws. Those are the cases, in the judgment of that Court, where public policy requires that relief should be granted.

Let the judgment of the Court below be affirmed.