No. 28.—JOHN D. DACY, plaintiff in error, vs. SHERROD H. GAY, defendant.

[1.] It is only in cases of felony at *Common Law*, and of treason, that in our State, the civil remedy is suspended until after the conviction of the offender for the same.

[2.] The terms of our Penal Code, relating to the offence of harboring a slave, make no change in this rule.

[3.] Where D is found in possession of, harboring, controlling, and hiring out a negro sl ve, a few months after he had wrongfully left the possession of his owner, G ; and at the same time the evidence showed that the possession of D must have commenced under circumstances which should have put him upon inquiry as to the ownership of the slave, and where it appeared that D continued for many months so to possess him, and no such inquiry was ma le, and no explanation was given by him : *Held*, that D might be presum d to have come into possession of the slave, by enticement or other unlawful means, at the time of his disappearance, and might be made accountable for the hire of said slave from that time.

[4.] Upon a motion for a new trial, on the ground that the verdict of the Jury was erroneous, because for an *amount* which no state of the facts, and no view of them could correctly sustain : *Held*, that if the Court find by any one calculation which the evidence will plainly and reasonably authorize, whether it be the same made by the Jury or not, that the finding might have been made for that amount, a new trial should not be granted.

Case, in Bibb Superior Court.    Tried before Judge POWERS, May Term, 1854.

This was an action brought by Gay against Dacy, for harboring a slave named Joe, the property of plaintiff, and for the value of his services during the time he was so harbored.

The plaintiff proved property in the negro ; that he was run away from him, from April 1st, 1851, until November 8th, 1852 ; that the defendant had him in possession, and professing to be acting as the agent for one John Thompson of Newton County, hired him out to work, with the firm of Henderson & Carlisle for nine months on a rail road contract ; that a man named Lindsay, for two months hired him out and received the money for his hire, previous to the last of said dates.    It was proven that Henderson & Carlisle paid Dacy for the negro, twenty dollars a month, and that his labor was worth from 20 to 30 dollars per month.    It was also proven that Dacey took the slave from Henderson & Carlisle, because they would not pay more than $20 per mouth, and hired him, or used him in Macon.    It was also proven that defendant had, some years previously, known the negro Joe as the property of Mr. Gay ; that he had worked with him a year or two.    Also, that he called the slave at one time Dave, at another Pompey.

Dacy *vs.* Gay.

Defendant moved to non-suit the plaintiff, on the ground that no civil action would lie, until a conviction for the crime. This motion the Court refused, and defendant excepted.

The testimony being closed, the Court charged the Jury, that if Dacy had gotten possession of the negro under circumstances that should or ought to have put him upon inquiry as to the fact of his being a runaway; and he was not vigilant and careful in his inquiries, whether he was so or not, that they had a right to infer that his possession of him began at the time that he ran away, unless there was evidence to show that for some part of the time he did not have him; if so, they should deduct such part of the time.

The Jury found for the plaintiff, Three Hundred and Eighty Dollars.

Whereupon, defendant moved for a new trial, on the ground of error in the above stated charge of the Court, and because the verdict of the Jury was against the weight of evidence, and unsupported by evidence. He likewise moved in arrest of judgment, on the same ground before taken for a non-suit.

All these motions were over-ruled by the Court—which decisions are alleged as error.

LAMAR, LOCHRANE, WHITTLE, for plaintiff in error.

POE, NISBET & POE, for defendant.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] According to the views which this Court entertains, and has before this time expressed, it is only in cases of felony *at Common Law*, or in the crime of treason, that the civil remedy is suspended until after the conviction of the offender for the crime. (*Adams vs. Barret,* 5 *Ga.* 404. *Neal vs. Farmer,* 9 *Ga.* 555.) This is, of course, not such a case.

[2.] The terms of our Penal Code, relating to the offence before us, make no change in this rule. These terms are, that

" on every conviction for concealing or harboring a slave, the owner of such slave may recover damages, in a civil suit, for the loss of the labor and services of such slave, notwithstanding such conviction"; and we think they were, in this connection, inserted, simply to negative the idea that a civil suit was, in any way, to be hindered by a prosecution for the crime. This precaution was most probably taken, in view of the fact that the Penal Code of 1833 (where the proviso is first found) declared, that the offence should be punished by a fine " not exceeding the value of the slave", or imprisonment, &c. Anxious to suppress this vice, and apprehensive, perhaps, that it might be supposed, that by making the measure of the fine the value of the slave, they had not intended that the wrong-doer should be made to respond twice to the value of the slave, they probably inserted this provision. And when this section of the Code was amended in 1838, and imprisonment in the penitentiary substituted, the Legislature, probably, without thinking of the motive in which it had its origin, again adopted this proviso. Hence, in our opinion, this civil remedy was not suspended by the crime, and the suit was properly brought.

[3.] The charge of the Court, that if the negro had come into the possession of the plaintiff in error, under circumstances which should have put the latter upon inquiry, as to the fact of his being run away, and he was not careful to ascertain this, he might be held responsible for his possession during the whole time, in our opinion, was not erroneous.

The evidence shows that defendant had the negro in possession—controlled him—received hire for him during a number of months, and gave receipts for the hire—that he had known him previously, as the property of his owner, Mr. Gay, and had then worked in company with him a year or two; that during the time he was hiring him out and receiving wages for him, he professed to be doing this in the name of one John Thompson of Newton County; that the slave had a pass purporting to be signed by John Thompson; and Dacy also produced a letter purporting to be signed by him; that defendant in error had known this negro by the name of *Joe;* and yet,

Dacy *vs.* Gay.

that he hired him out by the name of *Dave ;* and that at another time, he called him *Pompey.* All these were circumstances which might have been properly considered, as authorizing a presumption, unless they were explained, that the defendant in error had not come honestly and properly into the possession of the negro ; and which were sufficient, in the absence of any explanatory proof by him, to authorize the presumption, that he had taken or enticed the negro, thus found in his possession, from the owner, and to justify a Jury in holding him answerable therefor, in damages.

We know that if the rightful owner of personal property lose the same from his possession, and within some reasonable time thereafter, the property be found in the possession of another, the law puts upon the latter the *onus* of accounting for his possession ; and if he fail to do this, authorizes a presumption of the wrongful or felonious asportation of that property by him. This presumption is more or less strong, of course, according as the possession is more or less recent.

If this rule be just where the liberty of the citizen is at stake, it would seem very reasonable, where a person is found harboring, and controlling, and hiring out a negro slave, a few months after he went wrongfully from the possession of the owner, and at the same time, the evidence shows that whensoever that possession commenced, it must have occurred under circumstances which should have put the party upon inquiry, as to the true ownership of the slave, and that no such inquiry was made, nor any explanation given ; that in such case, the wrong-doer should be presumed to have come into possession of the slave by enticement, asportation or other unlawful means, at the time of his disappearance, and should be made to account for the hire of the same, from that time. This and nothing more, was the effect of the Court's decision.

It has been insisted that the verdict of the Jury is erroneous, because the exact amount found ($380) is not authorized by any state of the facts. Let us see.

The slave is proven to have been gone from his owner about 18 months. His services were shown to have been worth from

20 to 30 dollars per month. The evidence proves that the slave was hired to Messrs. Henderson & Carlisle, for nine months of this time, for twenty dollars per month, and that he was removed because these gentlemen would not pay the defendant in error a higher price for him. It was fair to suppose, that if the latter would not take twenty dollars per month for him, that for the other nine months he did receive a higher rate per month. If the Jury took the medium sum between twenty and thirty, viz: twenty-five dollars per month, this would give $180 for the first nine months, and $225 for the next nine; together, making $405.

Now, the evidence shows, that a person by the name of Lindsay, for two months of this time, received the wages for the slave, claiming the right to do so, for Mr. Thompson, the pretended owner; and if the Jury believed, (which the circumstances might well authorize) that this Lindsay was a confederate with the defendant in error, and received a portion of the gains, and if they allowed to him one-half of the two months' wages at $25 per month, and deducted this amount from the sum of $405, they would have arrived at the exact sum of $380. And this seems to be not at all an unreasonable or unjust view of the matter.

There might, perhaps, be other calculations made, by which the verdict could be sustained, but this is sufficient.

Let the judgment be affirmed.