## GASTON v. WESTERN UNION TELEGRAPH CO.

(District Court, N. D. Georgia. June 18, 1920.)

No. 297.

Death ⬤⇒35—Statutory action maintainable in courts of another state.

An action for wrongful death under the statute of Florida (Comp. Laws 1914, § 3146), brought for the benefit of the estate of deceased, who left no wife, child, or other dependent, *held* not contrary to the public policy of Georgia, and maintainable in its courts, although the statutes of the state do not give a right of action in such case.

At Law. Action by W. D. Gaston, administrator, against the Western Union Telegraph Company. On demurrer to petition. Overruled.

W. A. James and Westmoreland & Smith, all of Atlanta, Ga., for plaintiff.

Brewster, Howell & Heyman, of Atlanta, Ga., for defendant.

SIBLEY, District Judge. This suit, removed from the state court, is brought by the administrator of a deceased lineman of the telegraph company, who was killed while on duty in Florida. The petition discloses that he left no wife, child, or other dependent, and the suit is brought for the benefit of his estate, under a statute of the state of Florida (Comp. Laws 1914, § 3146) so permitting.

A general demurrer contends, first, that the enforcement of this right of action is contrary to the public policy of the state of Georgia; and, second, that no cause of action is set forth.

1. The statutes of the state of Georgia respecting homicides give a right of action to widow, husband, children, parents, and, in the case of employés of railroads, to any other dependent relatives. Where there are no such dependent persons, no right of action is given a representative in behalf of the estate of the deceased. The question is: Does this difference in the statutes render it impolitic for the courts of the state of Georgia to enforce this right of action.

This deceased was exercising his employment under the Florida statute. The rights of his estate, as well as the liabilities of the defendant, were presumably contemplated in the employment. There is certainly nothing immoral or contrary to natural right in the wrong doer making good the consequences of his wrong to whomever it may have affected, whether dependent on the deceased or not. So far as public policy in Georgia is concerned, it is true that this state inherited the common law, which gave no right of action whatever in cases of homicide. One of the common-law reasons, "actio personalis moritur cum persona," though not strictly applicable where a cause of action is created by a statute, instead of preserving the one that the deceased had, has been greatly modified in Georgia; for here, in the main, actions filed for torts do survive to the representative of the plaintiff and against that of the defendant (Park's Code, § 4421), and in the case of homicides survive to the successive beneficiaries named in the statute (Park's Code, § 4424).

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Another reason given is the public policy of having prosecution precede civil reparation. This policy obtained in Georgia, but the effect of it was held not to destroy or merge, but simply to suspend, a right of action arising out of treason or felony (Adams v. Barrett, 5 Ga. 411; Neal v. Farmer, 9 Ga. 555); and it extended only to homicides that were felonious at common law (Dacy v. Gay, 16 Ga. 203), and did not affect a master's cause of action for loss of service by the homicide of his servant, where no felony was committed (Shields v. Younge, 15 Ga. 349, 60 Am. Dec. 698). In this case the doctrine was extensively examined, and it was decided that the failure to permit an action for homicide at common law was rather due to the fact that in cases of felony, which all homicides then were, all of the offender's goods were forfeited and a civil suit would have been idle, than to anything else.

The policy of prosecution before compensation was carried into the Code of Georgia, and in the Code of 1882 (section 2970) it appears with the proviso added in 1879:

"That this section shall not apply to torts committed by railroad corporations, or other incorporated companies or their agents, or employés, nor shall the same apply to natural persons."

The whole section, thus rendered meaningless, has been dropped from later Codes, and it is now the policy of Georgia to require no prosecution. In point of fact, beginning with South Carolina Railroad Co. v. Nix, 68 Ga. 572, and Central Railroad v. Swint, 73 Ga. 651, and continuing to the present time, the homicide statutes of other states have been enforced in this almost without question. In South Carolina Railroad Co. v. Thurman, 106 Ga. 804, 32 S. E. 863, the difference in the homicide statutes of South Carolina relating to negligence was considered, and the rule of public policy announced for the state of Georgia was adopted from the opinion of the Supreme Court of the United States in Northern Pacific Railroad Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958, thus:

"To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that, for some other such reason, the enforcement of it would be prejudicial to the general interests of our own citizens."

The question was again considered in Southern Railroad Co. v. Decker, 5 Ga. App. 21, 62 S. E. 678, and a liberal rule recognized of the same character, where the difference between the Alabama statute and the Georgia statute lay in the measure of damages. In that case (5 Ga. App. on page 26, 62 S. E. 678) a decision of the Supreme Court of Alabama is referred to, to the effect that it was not necessary under the Alabama statute to aver that the intestate left a widow, children, or next of kin. Nevertheless the Alabama statute was considered not against the public policy of Georgia, and the suit was upheld. It is fair, however, to state that the particular suit before the court did involve a surviving widow.

In Burrell v. Fleming, 109 Fed. 489, 47 C. C. A. 598, the same rule of policy was announced by the Circuit Court of Appeals of the Fifth

Circuit, citing Railroad v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829. The same court, in Mexican National Railroad Co. v. Slater, 115 Fed. 593, 53 C. C. A. 239, upheld a suit in Texas in enforcement of a Mexican homicide statute quite different from those of Texas. It appears (115 Fed. 602, 53 C. C. A. 248) that one of the contentions made was:

"That under the Mexican laws the parties who may prosecute the suit are different from the parties who may prosecute a like suit in the state of Texas."

But it does not appear from the report what the differences were. The suit was upheld.

In Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123, a cause of action against directors for the debts of the corporation under the laws of one state was held enforceable in another state where no such liability existed. A discussion of the public policy involved will be found in that case. Much in point is the opinion in the case of Stewart v. B. & O. Railroad Co., 168 U. S. 445, 448, 18 Sup. Ct. 105, 106 (42 L. Ed. 537), where of a homicide it was said:

"A negligent act causing death is in itself a tort, and, were it not for the rule founded on the maxim, 'actio personalis moritur cum persona,' damages therefor could have been recovered in an action at common law. * * * An action to recover damages for a tort is not local, but transitory, and can as a general rule be maintained wherever the wrongdoer can be found. * * * It may well be that, where a purely statutory right is created, the special remedy provided by the statute for the enforcement of that right must be pursued; but, where the statute simply takes away a common-law obstacle to a recovery for an admitted tort, it would seem not unreasonable to hold that an action for that tort can be maintained in any state in which that common-law obstacle has been removed. At least it has been held by this court in repeated cases that an action for such a tort can be maintained 'where the statute of the state in which the cause of action arose is not in substance inconsistent with the statutes or public policy of the state in which the right of action is sought to be enforced.' "

I do not feel that the enforcement of the liability as defined by the Florida statute, between employer and employé, is contrary to any well-defined public policy of the state of Georgia, or would be injurious in any way to her citizens.

2. The allegations of the petition are somewhat unsatisfactory. It fairly appears that the deceased had equal means and opportunity with the master of knowing everything about the situation, except the single fact that the wires of the light company had come in contact with the wires of the telegraph company. Whether that contact was beyond his view does not clearly appear, but his general averment that he did not know of the danger and had no means of ascertaining it fairly implies that it was not within his sight. Thus understanding the petition, it is sufficient as against a general demurrer.

The demurrer will accordingly be overruled.