HALL v. GALVESTON, H. & S. A. RY. Co. *et al.*

(*Circuit Court, W. D. Texas, San Antonio Division.* May 25, 1889.)

1. MASTER AND SERVANT—FELLOW-SERVANTS.
   A telegraph operator is not a fellow-servant with a brakeman.
2. SAME—RAILROAD COMPANIES—RULES. ·
   Under rules requiring a telegraph operator "to report defects in roads and bridges, or obstructions of any kind, wherever met, to the superintendent, and, if possible, to the nearest section master or bridge foreman," it is the operator's duty to report such defects, etc., when they come to his knowledge, whether he is requested to do so by another employé or not.
3. DEATH BY WRONGFUL ACT—DAMAGES.
   In an action by a father for damages for the negligent killing of his son, under Rev. St. Tex. art. 2909, limiting the damages in such cases to pecuniary loss only, the jury may consider the circumstances of the son, his occupation, age, health, habits of industry, sobriety, and economy, his annual earnings, and his probable duration of life at the time of the accident; also the amount of property, age, health, and probable duration of plaintiff's life, and the amount of assistance he had a reasonable expectation of receiving from the son.

At Law.    Action for damages for negligent killing.
*McLeary & King* and *H. H. Boone*, for plaintiff.
*Columbus Upson*, for defendants.

MAXEY, J., (*charging jury.*)    The plaintiff, Lemuel H. Hall, as the surviving father of Lemuel R. Hall, deceased, brings this suit against the Galveston, Harrisburg & San Antonio Railway Company and the Southern Pacific Company, to recover damages resulting from the death of his son, Lemuel R., growing out of injuries received by the son at Hondo river bridge while in the service of defendants as a brakeman.    The cause of the disaster, as claimed by the plaintiff, and the death of his son, will be stated to you partially in the language of the petition, as follows: "That the proximate cause of the said injury done to the said Lemuel R. Hall, resulting in his death, was the defective and unsafe condition of the said defendants' railroad bridge across the Hondo river, and the track laid thereon; that the said bridge was at the time of the said disaster so broken and damaged as to be wholly unfit for trains to pass over, and incapable of bearing the weight of an ordinary engine and train of cars."    The petition of plaintiff further alleges that the son of plaintiff was ignorant of the unsafe condition of the bridge, and believed it to be perfectly safe, and sufficient to support the weight of the train on which he was riding; "and although the defendants well knew that said bridge was unsafe and insufficient to support the weight of locomotives and trains crossing the same, yet they wholly failed and neglected to repair the said bridge and track thereupon, and to put the same in good and safe condition for the use of their employés, and even wholly failed and neglected to warn the said Lemuel R. Hall and their other employés of the unsound, unsafe, and dangerous condition of the said bridge, but suffered them unawares, in the discharge of their duty to the defendants, to rush headlong upon certain death."

The defendants, in their answer, deny plaintiff's right to recover on the following grounds: (1) That the bridge was a good and substantial structure, and in a good state of preservation and repair, and hence that the injuries resulting to the deceased, Hall, from its giving away, were included in the risks assumed by him upon entering the service of defendants; (2) that Hall, the deceased, was guilty of negligence which contributed directly to his injuries; and (3) that, if there was any negligence at all on the part of defendants in connection with the accident which befell plaintiff's son, it was the negligence of a fellow-servant, for which the defendants are not liable.

In order to relieve this case of the irrelevant matter which has crept into it, I propose to direct your attention to what I regard as the real issues in the controversy, and, with that view, you are instructed that the following facts are indisputably shown by the testimony: (1) On the 1st day of March, 1888, two trains of cars of the defendants—one going east and the other west—met at Hondo City, a station on the line of the road, from three to five miles west of Hondo river. (2) The west-bound train was a regular freight train, and the east-bound train was what the witnesses term an "extra." (3) Thayer was the conductor, Crowley the engineer, and Erkel was one of the brakemen, on the west-bound train. On the east-bound train Davidson was the conductor, Hilliard the engineer, and Hall (the plaintiff's son) and Hardesty were the brakemen. (4) Prior to reaching Hondo City, at the date mentioned, the west-bound train, partially laden with lumber, passed over the Hondo river bridge, which was, before the crossing of that train, in a good and safe condition. While this train was passing over the bridge, a heavy piece of bridge timber fell from one of the cars on the bridge; and it is not denied by either side that this piece of timber, in falling, injured the bridge; but the train then on the bridge passed over safely. (5) The east-bound train left Hondo City between 10 and 30 minutes after the arival there of the train going west. This train (the east-bound train) continued east at a rapid rate of speed, and in passing over the Hondo river bridge the structure gave away, and in the disaster plaintiff's son was so severely injured that he died within a few days thereafter.

The facts of this case develop nothing, prior to the crossing of the bridge by the west-bound train, which would render the defendants liable in this suit, and you are so instructed. And the mere fact, gentlemen, disconnected from other facts, that a good, substantial railway bridge, in a state of safe preservation and in good repair, suddenly gives away under the weight and force of a moving train, would not render the company liable in a suit brought by an employé for injuries resulting therefrom; for in that case the injury would be included in the risks assumed by him in entering the service of the company for which no liability would attach to the latter. But the petition of the plaintiff alleges that the defendants failed and neglected to warn the deceased of the unsafe condition of the bridge, but suffered him and his co-employés to rush headlong upon sudden death. In support of this allegation it is insisted by the plaintiff that the engineer, Crowley, and the telegraph operator at Hondo City, (the latter being also

in the employ of the defendants,) although having knowledge that the bridge crossing Hondo river was defective, failed to report its defective condition to the superintendent, or the nearest section-master or bridge gang, and because of their failure so to do the train upon which deceased was working (with Davidson as conductor) proceeded down the track, without notice or warning of the dangerous condition of the bridge, and thus the disaster was precipitated.

Now, in this connection, you are instructed that, if Crowley was negligent in the performance of his duties, his negligence would not be imputable to the defendants, and they would not be liable therefor for any injuries which may have resulted to the deceased, for the reason that Crowley and the deceased were fellow-servants. But the rule of law as to fellow-servants would not exempt the defendants from liability for the negligence of Sale, the operator, (if any has been shown by the testimony,) if the injuries of deceased resulted from such negligence, because the operator and deceased did not occupy, with reference to each other, the attitude of fellow-servants in the sense of exempting an employer from liability to a servant for the negligent acts of a fellow-servant. Now, was Sale negligent in failing, as claimed, to report the condition of the bridge to the superintendent and the other officers above named, if he knew the bridge was injured? That he did not make a report to the superintendent admits of no doubt, as he so testified himself. Rules of the defendants have been introduced in evidence to show that it was the duty of Sale "to report defects in roads or bridges, or obstructions of any kind, wherever met, to the superintendent, and, if possible, to the nearest section master or bridge foreman." Sale testified that it was not his duty to telegraph reports in reference to bridges, etc., unless requested by some employé of the company. You are charged that, under the rules admitted in evidence, it was his duty to make reports as required by the rules, whether he was requested to do so by any other employé or not, if he knew of the existence of the rules; and of his knowledge in that regard you must satisfy yourselves from the testimony. It is shown by the testimony that Sale knew that a heavy bridge timber had fallen on the bridge from Crowley's train; and you are instructed that, if he knew of the existence of the rule to which I have referred, and knew that the bridge had been probably injured by the falling timber, and was wanting in the exercise of such reasonable care in not reporting the condition of the bridge to the superintendent, as a person of ordinary prudence and caution would have exercised, then such failure of duty of Sale was negligence; and if the injuries of the deceased resulted from such negligence on the part of Sale, the defendants would be liable in this suit, and in that event your verdict should be for the plaintiff, unless the deceased, Hall, was himself guilty of negligence which contributed to his injuries. The defendants insist that he was so negligent, in that Hall knew of the defects in the bridge, and, notwithstanding his knowledge, continued on the train, and carelessly exposed himself to the impending danger. Upon this point, gentlemen, the law requires a man to take due and reasonable care for his own safety, and,

failing in that, he will not be permitted to recover damages for injuries which he brings upon himself. If the deceased knew that the bridge was dangerous, from information received from Crowley or Davidson, or from any other source, and did not avail himself of the knowledge acquired for his own safety, and if he failed to exercise that reasonable care for his own preservation as an ordinarily prudent person would have exercised in a similar situation, and under like circumstances, and his injuries resulted therefrom, then the plaintiff would not be entitled to recover, and your verdict should be in favor of the defendants.

The plaintiff in this case does not contend that the injuries of his son resulted from any act of negligence on the part of the conductor, Davidson, and therefore that feature of the case will not be submitted to your consideration.

The questions, touching the alleged negligence on the part of Sale, the telegraph operator, and contributive negligence on the part of the deceased, Hall, are questions purely of fact, and remitted solely to your determination, and you must form your conclusions in reference to them from a consideration of all the facts and circumstances before you. You have heard the testimony of the witnesses, both for plaintiff and defendants, and have observed their demeanor upon the stand, and their manner of testifying. Of their credibility you are the exclusive judges, as well as of the weight to be attached to their testimony. With these principles of law as a guide, consider the case, and render such a verdict as the law and testimony may warrant. If, in view of the evidence and the foregoing instructions, your finding should be in favor of the defendants, you will go no further, and simply render a verdict in their favor; but, if you find in favor of the plaintiff, you will proceed to determine the amount of damages which you should award him, and upon this question it will be necessary for the court to give you instructions.

This suit, you are aware, is brought, not by the person injured in the bridge disaster, but by his father. The measure of damages in the two cases is entirely different. In both, the amount is left largely to the discretion of the jury, but that discretion must be exercised in view of the evidence, and should not be a matter of mere guess-work and speculation. In suits of this character, instituted by the father for the negligent killing of his son, the father is not entitled to recover anything for physical suffering, or mental pain and anguish, endured on account of the son's death; nor can he recover damages because of the loss of the son's society, (see *Railroad Co.* v. *Barron*, 5 Wall. 105; *March* v. *Walker*, 48 Tex. 375;) nor, under the facts of this case, is the plaintiff entitled to recover punitive or exemplary damages. The statute, which authorizes the maintenance of suits "for injuries resulting in death," provides that "the jury may give such damages as they may think proportioned to the injury resulting from such death." Rev. St. art. 2909. It is necessary for the plaintiff, in cases of this kind, to show a damage of a pecuniary nature; yet such damages are not to be given merely in reference to the loss of a legal right, but may be calculated with reference to the reasonable expectation which the plaintiff had, resulting from his

condition, and the disposition and ability of his son, during his life, to bestow upon him pecuniary benefit as of right, or in obedience to the dictates of filial duty without legal claim. *Railroad Co.* v. *Kindred*, 57 Tex. 498. The damages in this case, if any are awarded, being for the pecuniary loss only, sustained by the plaintiff on account of the death of his son, it is incumbent upon the plaintiff to prove such facts and circumstances as will enable the jury to return a verdict upon the evidence which would approximate reasonable certainty; and the testimony may include the circumstances of the deceased son, his occupation, age, health, habits of industry, sobriety, and economy, his skill and capacity for business, the amount of his property, his annual earnings, and the probable duration of his life. *Railroad Co.* v. *Cowser*, Id. 304. And so the testimony should include the circumstances of the plaintiff, his age and health, the amount of his property, and the probable duration of his life. How long, gentlemen, under the testimony in this case, will be the probable duration of the plaintiff's life, dating from his son's death, and how much pecuniary assistance would he have had a reasonable expectation of receiving from his son, had he lived? These are important questions for you to consider, and their solution is involved in some difficulty. It is shown by the testimony that, at the date of his son's death, plaintiff was 57 years old, and in feeble health, and that prior to that time the son had sent him sums of $40 or $50, as plaintiff had asked for them. The testimony further shows that the son had urged plaintiff to move elsewhere,—that is, change his residence for his health, —and promised and pledged plaintiff to give him $40 or $50 per month. Calling your attention to that promise on the part of the son to give plaintiff that sum of money monthly, you are instructed that the son, had he lived, would not have been compelled to pay that amount of money monthly to his father. He would have been under no legal obligation to do it, but could have paid it to him or not, at his option. In connection with the question of damages you may also regard the contingency of the son's marriage, had he lived, and whether that circumstance would have affected—either in increasing or diminishing—the sum which the son would probably have contributed to the support and maintenance of the plaintiff.

Consider all the facts and circumstances in evidence, and return such a verdict as you may deem right and proper, in view of the testimony and these instructions.