GULF, COLORADO AND SANTA FE RAILWAY COMPANY v. J. A.
YOUNGER.

Decided February 15, 1897.

1. **Damages—Death of Wife—Re-marriage.**

In a suit for damages by causing death of plaintiff's wife, the fact that her place had been supplied by a subsequent marriage does not mitigate the damages, and evidence of such fact and of the character of the second wife, and her capacity to supply the place of the former, is not admissible. (Railway v. Long, 87 Texas, 148, limited.) (Pp. 390, 391.)

2. **Same—Death of Mother—Evidence of Financial Condition.**

In an action for damages from the death of plaintiff's mother, evidence of the financial condition of the head of the family at the time is admissible to show the extent of the pecuniary injury sustained by the daughter. The nurture and intellectual, moral and physical training received from a mother varies with circumstances, and of such circumstances it is proper to inform the jury. (Pp. 391, 392.)

QUESTIONS CERTIFIED from Court of Civil Appeals, Third District, in an appeal from Tom Green County. The opinion states the questions.

*W. A. Wright, Jos. Spence, Jr.,* and *J. W. Terry,* for appellant.— Compensation is the end of the law in the assessment of damages, and where from the same act an injury and a benefit both result, the defendant is entitled to set off against the injury the benefit accruing. It was not the intention of the law that a party should be compensated for the loss of the services of a wife covering a period when there was no such loss; and in mitigation of damages defendant was entitled to show the second marriage of Dr. Younger and the qualifications of his second wife, that they might determine the extent of his loss subsequent to his remarriage. In determining the extent of Della Younger's loss, the jury, under law, should properly have considered her situation, condition and surroundings and the probabilities, if any, of her receiving the same services from some other source that her mother might have rendered her; and as giving the jury the proper data for these deliberations defendant was entitled to show the qualifications, character, etc., of her father's second wife. It is the duty of a party who is injured by the wrongful act of another to use reasonable diligence to lessen the damages resulting from the injuries as far as practicable. Dr. Younger, after the death of his first wife, having remarried without any legal compulsion but of his own free will, could not, after such remarriage, decline to accept from his second wife such services as she was capable of rendering, merely for the purpose of recovering damages of the defendant for loss of services which were not, in fact, being lost, but were then available to him from another. Railway v. Southwick, 30 S. W. Rep., 593; Railway v. Long, 87 Texas, 148; Hale v. Railway, 39 Fed. Rep., 21.

In considering of their verdict the jury under the law should properly have taken into consideration the condition in life of Della Younger and to what extent if any, the dependence of said Younger on her mother was increased or dismissed thereby; and on this line, just as the poverty

of the minor might be shown to show dependence, the defendant was entitled to show the wealth and affluence to show probable independence or lessened dependence. Railway v. Kindred, 57 Texas, 498; Sills v. Railway, 28 S. W. Rep., 908; Railway v. Lett, 26 Am. and Eng. R. R. Cases, 463.

*Guion & Truly, Cochran & Hill* and *Fisher & Townes,* for appellee.— In an action for wrongfully causing the death of the wife, evidence that the husband had married again, and that his second wife performed like services and duties and contributed in like manner as the first wife to the support of the family and the accumulation of property, is not admissible in mitigation of damages. Davis v. Guarnieri, (Ohio.) 15 N. E. Rep., 350; Railway v. Garr, 57 Ga., 277; s. c. 24 Am. Rep., 492; Althorf v. Wolfe, 22 N. Y., 355; Kellogg v. Railway, 79 N. Y., 72; Railway v. Kirk, 90 Pa. St., 15.

If it were held by the courts that a second marriage would mitigate the damages accruing to the husband and child upon a cause of action for the death of the first wife, the tendency of such holding would be calculated to restrain marriage, and would therefore be against public policy. 14 Am. and Eng. Encycl. Law, 474-475, note 6.

It cannot be conceived how the act of wrongfully killing the wife of appellee could be constructed as a benefit. The plaintiff had a cause of action, and was entitled to compensation for the death of his wife, for himself and his daughter, immediately upon her death. This compensation includes the loss to the husband and child, at that time, of whatever of pecuniary aid the deceased would have rendered up to the time of the trial, and compensation for such services as the deceased might have rendered for the future had she lived, during the remainder of her natural life. No mitigation other than compensation for the loss sustained, and which accrued at the time of her death, could properly be considered. The appellant became indebted to appellee and his daughter, the value of the loss of her life at that time, which debt could only be lessened or extinguished by its payment by appellant in whole or in part. There was no duty devolving upon the appellee requiring him as a matter of diligence to marry again in order to "lessen the damages resulting from the injuries," caused from the death of his wife, as is asserted in appellant's proposition.

The court correctly excluded the testimony offered by appellant for the purpose of showing the wealth of Dr. Younger. The wealth of the plaintiff is an immaterial issue in this case. The character, capacity and services of the deceased, and the aid rendered appellee and his daughter during her life time, and what she may have been expected to render in the future were fully shown by the evidence. And even if the testimony were admissible for the purpose its exclusion was in no sense prejudicial to appellant, as the purpose for which it offered was supplied by other evidence of the same nature. As has been well said; "if the wealth of the plaintiff may be shown to increase damages, the correlative of the

proposition should also be accepted, and the defendant allowed to miti-gate his damage by showing his poverty." Or if such were allowed as the rule, and the wealth of plaintiff is shown for the purpose of lessen-ing the damages, proof of defendant's wealth should also be permitted for the purpose of increasing the damages, and this the law has never permitted. Rev. Stats., art. 2909; former appeal in this case, 29 S. W. Rep., 948; Railway v. Lyde, 57 Texas, 510; Field on Dam., sections 120, 609

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Third Supreme Judicial District has certified to this court the following statement and questions:

"This is a suit by J. A. Younger, in his own behalf and that of his minor daughter, Della Younger, to recover damages resulting from the death of his wife and the mother of Della, who was killed on the 17th day of April, 1892, by one of the defendant's trains while in operation by its servants.

"The case was tried in the District Court of Tom Green County and re-sulted in verdict and judgment in favor of J. A. Younger for eight thou-sand dollars and in favor of his minor daughter, Della Younger, for five thousand dollars.

"On the trial of the case, as shown by appellant's bill of exception No. A, the following proceedings were had: "While the witness Dr. W. W. Fowler was on the stand, after having testified, as shown by his evidence on direct examination set forth in the statement of facts, to the character and qualifications of Mrs. Younger as a wife and mother and the services she rendered her husband and daughter, on cross-examination the defendant sought to show by the witness that subsequent to the death of plaintiff's wife, Annie Younger, about the 7th day of June, 1894, plain-tiff Dr. J. A. Younger married again, marrying one Miss Sheets; that the said Miss Sheets was and long has been a resident of the town of Ballinger; that she was a woman of culture and refinement, popular in the said town of Ballinger, and Runnels County; had a great many friends; had lived there a great many years; was fit and capable to render to the plaintiff, and since her marriage to him rendered to the plaintiff every service that his deceased wife, Annie Younger, had rendered; and that she was qualified and fitted to rear the minor, Della Younger, as well as Mrs. Annie Young-er, the deceased, would have done; that, if anything, her advantages and education had been superior to those of Mrs. Annie Younger; that she was able to, willing to, and in fact did render to the said Della Younger every service that Annie Younger could have rendered. To the introduction of any testimony of any such character the plaintiff then and there objected, which objection was sustained by the court and the defendant forbidden to show any such facts in evidence; to which ruling of the court the de-fendant then and there excepted. * * * * That thereafter, while Dr. J. A. Younger was on the stand testifying in his own behalf, the de-fendant offered to show the same facts as were sought to be developed

from Dr. Fowler, as above set forth, to which testimony the plaintiff again objected, which objections were sustained by the court, and to which ruling of the court the defendant then and there excepted."

"Also, at said trial, as shown by appellant's bill of exception No. G, the following proceedings were had: "Defendant's bill of exception No. G shows that, while the witness Dr. W. W. Fowler was on the stand, defendant sought to show by him that Dr. J. A. Younger was a man of means, president of a bank, worth from thirty to fifty thousand dollars; to the introduction of which testimony the plaintiff then and there objected, whereupon the defendant stated to the court that it offered such testimony for the purpose of enabling the jury to intelligently and properly pass upon the question of damages, because it is a matter of common knowledge that children of poor and indigent parents are more dependent upon their parents, particularly upon their mother, for training and culture and nurture than are the children of parents better circumstanced; that while children, particularly daughters, of people of very moderate circumstances were almost entirely dependent upon their mother for training, nurture, education, educational advantages, etc., that ordinarily persons of moderate competence, moderate means, and well to do, when their daughters reached the age of Della Younger, 14 years, sent their daughters off to boarding school, procured for them teachers and tutors, and gave them better opportunities than people of moderate means were able to furnish to their children, and thereby to a large extent·removed them from immediate dependence upon their mother for nurture, training, etc., and therefore, measured by the ordinary· conduct of men, the loss of a mother to a minor daughter was greater where parents were in moderate circumstances than where they were in better condition financially. That the defendant was entitled to show the financial condition of the plaintiff Dr. Younger, that the jury might intelligently pass upon the extent of the damage that the plaintiff's daughter Della Younger had sustained by the death of his wife. Whereupon the court sustained the plaintiff's objection, and declined to allow the defendant to show such testimony. To which ruling of the court the defendant then and there excepted."

"To the rulings of the court, as set out in these bills of exceptions, assignments of errors are based, and the admissibility of the evidence sought to be introduced are the points raised in this court by the assignments of errors.

"Under these assignments two questions arise, which are propounded to the Supreme Court of Texas for its answer.

"First.   Was the evidence of witnesses Fowler and Younger admissible as set out in bill of exception No. A?

"Second.   Was the evidence of witness Fowler admissible as set out in bill of exception No. G?"

To the first question we answer, that evidence of the marriage of plaintiff Younger after the death of his wife, on account of which he sought to recover damages, was properly rejected by the court.   Davis v. Guar-

nieri, 45 Ohio, St., 470; Railway v. Garr, 57 Ga., 277; Philpott v. Railway, 34 Atl. Rep., 856; Dimmey v. Railway, 27 W. Va., 32.

If the plaintiff's wife was killed through the negligence of the defendant he then lost the value of her life as a wife, and the fact that her place has been supplied by a subsequent marriage does not in any manner operate to mitigate the damages for which the wrongdoer was responsible.

This case is analogous to that class of cases in which the injured party is employed at the time of the injury at certain wages and by the injury is disabled to perform the services for which he is employed, and by reason of the injury received he loses the value of the time during which he is disabled for the performance of the work. In such case the person causing the injury will be held liable for the value of the time lost notwithstanding the employer of the injured party may voluntarily continue to pay the wages contracted for during the entire time of disability. Railway v. Dickson, 59 Ind., 317.

The appellant cites the case of Railway Company v. Long, 87 Texas, 148, to support its contention that the evidence of marriage was admissible in this case. In that case it was claimed that the income of the deceased, from which she aided her children, was derived chiefly from her property, and this court held that the evidence was admissible to be considered by the jury in determining the pecuniary loss sustained by the children through the death of their mother. The court, speaking by Judge Gaines, discussed a number of propositions bearing more or less directly upon the question before it and passing from those questions finally announced its conclusion as follows: "But, however, that may be, the case is very different when the only aid which the beneficiaries have received from the deceased during his life has been a part of the income of its property, and when, upon his death, the title to the corpus of such property absolutely vests in them, and we are therefore of the opinion that in a case involving similar facts they should be admitted in evidence to be considered by the jury;" and after further discussing another proposition of law contended for by the parties before the court, the judge said: "The rule thus announced is doubtless correct as applied to the facts of the particular case, and it may be applicable generally under the Statute of Pennsylvania. It does not apply under the Statute of this State to a case like the present, in which the prospective aid was mainly, if not wholly, from the income of property, and in which, upon the death, some of the beneficiaries take by bequest all the estate and others get none." To the extent that the aid given by the mother to the children was derived from income of property, which the heirs received at the mother's death, such aid was not lost by the mother's death. But the fact that the children received property at the death of the mother constitutes no defense against the claims of such children to be compensated for the pecuniary loss sustained by her death.

To the second question we reply, that evidence of the financial condition of the head of the family at the time of Mrs. Younger's death should

have been admitted upon the issue of pecuniary injury sustained by the daughter.

There are duties which all mothers owe to their children by nature and which are well expressed by the following quotation: "But infant children sustain a loss from the death of their parents, and especially of their mother, of a different kind. She owes them the duty of nurture and of intellectual, moral and physical training, and of such instruction as can only proceed from a mother. This is, to say the least, as essential to their future well being in a worldly point of view and to their success in life, as the instruction in letters and other branches of elementary education which they receive at the hands of other teachers who are employed for a pecuniary compensation. * * * The injury in these cases is not pecuniary in a very strict sense of the word, but it belongs to that class of wrongs distinguished from injuries to the feelings and sentiments; and in my view therefore it falls within the term as used in the Statute." Tilley v. Railway, 24 N. Y., 476.

In the absence of proof, a jury might assess damages in such a case based upon a common knowledge of the manner in which mothers usually perform such duties. (Railway v. Lacy, 86 Texas, 244.) It is true, however, that these duties are discharged and aid rendered to children in various degrees according to the temperament, education and other circumstances of the different mothers, and it is proper always to inform the jury of every fact and circumstance which will assist them to determine what aid the child would in all probability have received from the mother in the particular case if she had lived. By this means we approach as near as practicable the actual pecuniary injury sustained by the death of a parent. Railway v. Leverett, 48 Ark., 344; Railway v. Crudup, 63 Miss., 303; Wiltse v. The Town of Tilden, 77 Wis., 156; Chicago v. Powers, 42 Ill., 173; Staal v. Railway, 57 Mich., 245.

The child of the deceased mother is not entitled to recover more or less damages because of the fact that the family was rich or poor. But the circumstances which surround the mother and child are different in wealthy and poor families and therefore such facts are admissible to show what aid the child could expect to receive from the continuance of the mother's life in the given state of circumstances as surrounded them.

Denman, J., did not sit.