MEXICAN NAT. R. CO. v. SLATER et al.

(Circuit Court of Appeals, Fifth Circuit. April 22, 1902.)

No. 1,063.

**1. WRONGFUL DEATH — RIGHT OF ACTION UNDER MEXICAN LAWS— ENFORCE-MENT IN UNITED STATES.**

The statutes of Mexico giving a civil right of action to recover damages for wrongful death through negligence, although it bases such right of action on the fact that defendant's negligent acts or omissions constitute crimes, do not for that reason belong to the class of criminal laws which can be enforced only in the courts of the country where the offense was committed.

**2. SAME—JURISDICTION.**

The laws of Mexico giving a right of action to recover damages for a wrongful death occurring in that country are not contrary to the public policy of Texas, nor to natural justice or good morals, nor is their enforcement in that state calculated to injure the state or its citizens, and an action to enforce the right so given may be maintained therein in a state or federal court having jurisdiction of the parties, in which the established forms of procedure are such that substantial justice can be done between the parties.[1]

**3. EVIDENCE—PROOF OF LAW OF FOREIGN COUNTRY—EXPERT TESTIMONY.**

In an action based on a statute of a foreign country, which must be proved, while the statute itself must ordinarily be proved by a duly authenticated copy, the introduction of such copy does not render inadmissible parol testimony of persons learned in the law of such country to prove the construction placed on the statute by its courts or the unwritten law of the country affecting the right of recovery, to aid the court in correctly construing and applying the statute; and such testimony is peculiarly appropriate and should be received where the statute is written in a foreign language, and the copy introduced is a translation.

**4. WRONGFUL DEATH — RIGHT OF ACTION UNDER MEXICAN LAWS—ENFORCE-MENT IN UNITED STATES.**

Under Rev. St. Tex. 1895, art. 3027, in an action for wrongful death "the jury may give such damages as they may think proportioned to the injury resulting from such death, and the amount so recovered shall be divided among the persons entitled to the benefit of the action * * * in such shares as the jury shall find by their verdict." As construed by the courts of the state, while such damages are limited to compensation for pecuniary loss, they are not confined to such sum as can be exactly proved, but may include a further element of damages where the person killed stood in the relation of husband, wife, or parent to the beneficiaries; also to be fixed by the jury in the exercise of "their own knowledge, experience, and sense of justice," and the right to such damages is not affected by the remarriage of the surviving wife or husband. The statute also requires that the rights of all entitled to damages shall be determined and settled in one action. Under the laws of Mexico the liability of the defendant in such case is limited to the furnishing of a continuing support to the legal dependents of the deceased during the periods of time that such support would have been due from him, and in the amounts that it would have been due, proportioned to his ability to give it and the necessities of

---

[1] See Death, vol. 15, Cent. Dig. § 50.

What law governs actions for death by wrongful act, see note to Burrell v. Fleming, 47 C. C. A. 606.

those entitled to receive it, which questions are required to be de-- termined by the judge. The recovery in such case is in the nature of alimony or pension awarded by the court to each beneficiary, payable in monthly installments, which cease in the case of a widow or daughters on their marriage, and in the case of sons on their attaining majority. *Held*, that the right of recovery given by such laws, at least in a case where the wife and daughters of the deceased are beneficiaries, is so dissimilar to that given by the laws of Texas, and so incapable of enforcement through any procedure provided for trials at law by the statutes of Texas or by the common law, with due regard to the rights of the defendant, that a circuit court of the United States in that state should decline jurisdiction of an action at law for its enforcement.

In Error to the Circuit Court of the United States for the Western District of Texas.

This was an action by the defendants in error, Lena M. Slater, and William F. Slater, Jesse R. Slater, Annie E. Slater, and Henry G. Slater, minors, surviving wife and children of William H. Slater, deceased, against the Mexican National Railroad Company (the plaintiff in error), to recover damages for the death of the deceased. The petition is in the usual form until it reaches the ninth paragraph, and then it is in the words and figures following:

"(9) Plaintiffs further allege that by the laws of Mexico which now exist and existed and were in force at the time and place of the happening of the killing of William H. Slater through the defendant's negligence as aforesaid, they, the plaintiffs, have had the right of action against the defendant for their damages, and they say that the following were, and are now, the laws of Mexico applicable to this case, out of which the said right of action grew, and by virtue of which the same now exists in the said republic of Mexico, to wit:

"From the Federal Constitution of the Mexican United States:

" 'Art. 72. Congress has power: * * * (22) To enact laws governing the general lines of communication, and governing postoffices and mails.'

" 'Art. 97. The federal court has jurisdiction: (1) Of all questions growing out of the execution and application of the federal laws, except when the application of the law only affects interests of individuals, in which case the local judges and tribunals of the state shall entertain jurisdiction.'

"From the Penal Code of Mexico:

" 'Art. 4. A crime is a voluntary infraction of a penal law, doing that which it prohibits, or neglecting to do that which it commands.

" 'Art. 5. A misdemeanor is the infraction of police regulations or proclamations and good government.

" 'Art. 6. There are intentional crimes, and crimes resulting from neglect.'

" 'Art. 11. Negligent crimes exist: (1) Where an act is done, or a duty omitted, which, although lawful in itself, is not so by reason of its consequences, if the accused fails to provide against the consequences, through negligence, want of reflection or care, by not making proper investigations, by not taking necessary precautions or through unskillfulness in any art or science, the knowledge of which is necessary in order that the act done may not result in injury. Unskillfulness is not punishable when he who does the act does not profess the art or science necessary to be known, and acts when impelled by the gravity and urgency of the case. * * * (3) Where the question relates to an act which is punishable solely by reason of the circumstances under which it is done, or by reason of a circumstance personal to the party aggrieved; if the accused is ignorant of such circumstance, through not having previously made the investigation which the duty of his profession or the importance of his case demands.'

"Pen. Code, bk. 2. 'Civil Liability in Criminal Matters':

" 'Art. 301. The civil liability arising from an act or omission contrary to a penal law consists in the obligation imposed on the party liable, to make (1) restitution, (2) reparation, (3) indemnization, and (4) payment of judicial expenses.'

" 'Art. 304. Reparation comprehends: Payment of all damages caused to the injured party, his family or a third person for the violation of a right which is formal, existing and not simply possible, if such damages are actual, and arise directly and immediately from the act or omission complained of, or there be a certainty that such act or omission must necessarily cause, a proximate and inevitable consequence.

" 'Art. 305. Indemnization imports: The payment of damages, that is, of that which the injured party fails to enjoy as a direct and immediate consequence of an act of omission by which a formal, existing and not merely possible right is attacked, and for the value of the fruits of the thing usurped and already consumed, in the cases in which the same should be done conformably with civil right.

" 'Art. 306. The condition required by the two preceding articles, that the damages and injuries should be actual, shall not prevent that the indemnization of subsequent damages and injuries be exacted by a new suit, when they shall have accrued; if they proceed directly from, and a necessary consequence of, the same act or omission from which resulted the previous damages or injuries.

" 'Art. 307. The payment of judicial expenses solely embraces those absolutely necessary, which the injured party incurs for the purpose of investigating the act or omission which causes the criminal proceeding and to avail himself of his rights in such proceeding or in the civil suit.

" 'Art. 308. The civil responsibility cannot be declared except at the instance of the party entitled to recover.

" 'Art. 309. The judges who adjudicate upon the civil responsibility shall be controlled by the provisions of this title, so far as its provisions extend; on other questions, they shall follow, according to the nature of the suit, the provisions of the civil or of the commercial laws which may be in effect at the time of the happening of the act or omission causing the civil responsibility.

" 'Art. 310. The right to civil responsibility forms a part of the estate of a decedent and descends to his heirs and successors, provided it be not the case of the following article, or that it arise from injury or defamation, and that, the offending person having been able in the life-time to bring his suit, he neither did so nor directed his heirs to sue; in such case the offense shall be understood as remitted.

" 'Art. 311. The action to enforce civil responsibility demanding support of a person guilty of homicide is personal, and belongs exclusively to the persons named at the end of article 318 as directly damaged. Consequently such action forms no part of the estate of the deceased, nor is it extinguished, although the latter pardon the offense in life.'

" 'Art 318. The civil responsibility that grows out of a homicide done without right (or justification) comprehends the payment of the indispensable expenses of the burial of the body, the expenses and necessary charges made for the cure of the deceased, the damages that the homicide causes to the property of the deceased, and of the support not only of the widow, descendants and ascendants of the deceased, who were being supported by him, he being under legal obligations to do so, but also to the posthumous descendants that he may leave.

" 'Art. 319. The obligation to furnish support shall last during all the time that the deceased might have lived if the homicide had not killed him, and that time shall be calculated by the judges according to the table at the end of this chapter, but taking into consideration the state of the health of the deceased before the homicide was committed. As limitation of this rule the obligation shall cease: (1) At whatever time it shall not be absolutely necessary for the subsistence of those entitled to receive it. (2) When those beneficiaries get married. (3) When the minor children become of age. (4) In any other case in which, according to law, the deceased, if alive, would not be required to continue the support.

" 'Art. 320. In order to fix the amount which should be given as the measure of support, the ability of the party responsible for the killing shall be taken into consideration and the necessities and circumstances of the persons entitled to receive it.'

" 'Art. 325.  *  *  *  Table of mortality and expectancy of life:

| A 10. | Corresponded | 40.80 |
|---|---|---|
| " 15. | " | 37.40 |
| " 20. | " | 34.26 |
| " 25. | " | 31.34 |
| " 30. | " | 28.52 |
| " 35. | " | 25.72 |
| " 40. | " | 22.89 |
| " 45. | " | 20.05 |
| " 50. | " | 17.23 |
| " 55. | " | 14.51 |
| " 60. | " | 11.05 |
| " 65. | " | 09.63 |
| " 70. | " | 07.58 |
| " 75. | " | 05.87 |
| " 80. | " | 04.60 |
| " 85. | " | 02.00' |

"Federal Civil Code, chap. iv:

" 'Art. 205. The obligation to give support is reciprocal; he that gives support has at the same time the right to ask it.

" 'Art. 206. Married people in addition to the general obligation imposed by matrimony, have that of giving support in cases of divorce and others designated by law.

" 'Art. 207. Fathers are obliged to support their children. If it should be impossible for parents to do so, or should they be unable to do so, the obligation falls upon other ascendants by both lines of ascendancy who are nearest of kin.

" 'Art. 208. The children are obliged to give support to their parents. If it is impossible for the children to do so, or they are unable to do so, then those descendants next in kin are obliged to do so.'

" 'Art. 211. The support comprehends eating, dress, habitation and assistance in case of sickness.

" 'Art. 212. In regard to minor's support it comprehends in addition to the necessary expenses for the primary education of the party entitled to support, and to furnish him some calling, art or profession, honest and adequate to his sex and personal circumstances.'

" 'Art. 214. The support should be proportioned according to the abilities of those who have to give it, and the necessities of those who have to receive it.'

" 'Art. 220. The assurance of the support may consist in a mortgage, bond or deposit of sufficient amount to cover the support.'

" 'Art. 225. The right to receive cannot be renounced nor is it an object of transfer or assignment.'

"Pen. Code, bk. 2:

" 'Art. 313. The judges who take cognizance of suit based upon civil responsibility shall endeavor that the amount and terms of payment be fixed by agreement of the parties. Failing in this, the provisions of the following article shall be observed.  *  *  *'

" 'Art. 321. In cases of blows or wounds, from which the injured party does not remain crippled, lamed or deformed, he shall have the right that the responsible party pay all his expenses of cure, the damage he may have suffered, and that which he may fail to gain during the time which, in the opinion of competent persons, he may not be able to do the work by which he subsists. But it is essential that the inability to work should be the direct result of the wounds or blows, or be a cause which is the immediate effect of such blows or wounds.

" 'Art. 322. If the inability of the injured party to devote himself to his accustomed work be permanent, from the moment in which he shall recover, and can properly devote himself to other and different work, which may be lucrative and appropriate to his education, habits, social position and physical constitution, the civil responsibility shall be reduced to paying him

the sum which his ability to earn in his new employment falls short of his daily earnings in his former occupation.

" 'Art. 323. If the blows or wounds cause the loss of any member, not indispensable for work, or the person wounded or struck remain otherwise crippled, lame or deformed, by that circumstance he shall have the right not only to the damages and injuries, but also to the sum which the judge may determine as extraordinary indemnity, considering the social position and sex of the person and part of the body remaining crippled, lamed or deformed.

" 'Art. 324. The gain which the injured party fails to earn during his inability to work shall be computed by multiplying the sum which he formerly earned per day by the number of days of his disability.

" 'Art. 325. The provisions of the foregoing articles for computing the civil responsibility for wounds or blows shall be applied to all other cases where, in the violation of a penal law, a person may cause the illness of another, or may have placed him under a disability to work.

" 'Art. 326. No person shall be charged upon a civil liability upon an act or omission contrary to a penal law unless it be proven; that the party sought to be charged usurped the property of another; that without right he caused, by himself or by means of another, damages or injuries to the plaintiff; or that, the party sought to be charged being able to avoid the damages, they were caused by a person under his authority.

" 'Art. 327. Whenever any of the conditions of the preceding articles are established, the defendant shall be civilly liable, without regard to whether he be absolved or condemned to criminal liability.'

" 'Art. 330. In order that masters may be held civilly liable through their clerks and servants, according to the provisions of articles 326 and 327, it is an indispensable condition that the act or omission of the clerks or servants causing the liability shall occur in the service for which they were employed.

" 'Art. 331. Under the conditions of the preceding article, those liable are * * * railroad companies.'

" 'Art. 363. Limitations: The various actions by which civil responsibility may be demanded, or the execution of a final judgment declaring that such responsibility has been incurred by the accused may be asked shall be extinguished according to the terms and in the manner provided by the Civil Code of the Commercial Code, according to the nature of the demand and the subject-matter treated of.

" 'Art. 364. Amnesty shall not extinguish the civil responsibility, nor the actions to exact it, nor the legal rights which third persons may have acquired. Nevertheless, when the responsibility may not yet have been made effective, and the demand is not for restitution, but for reparation of damages, for indemnity for injuries, or for the payment of judicial expenses, the guilty person shall remain free from such obligations only when it is so declared in the amnesty and they are expressly left to the charge of the public treasury.

" 'Art. 365. A pardon shall in no case extinguish civil responsibility nor the actions to enforce it, nor the legal rights which third persons may have acquired.

" 'Art. 366. Limitation is interrupted by criminal proceeding until final judgment is pronounced. This done the term of limitation commences to run anew.'

"Transitory Law, Pen. Code:

" 'Art. 26. Until it is determined in the new Code of Procedure what judges shall have jurisdiction and the mode of proceeding, in suits to enforce civil liability, the following rules shall be observed: * * * (5) Actions to enforce the civil liability may be brought before the court of civil jurisdiction, whether or not the criminal proceeding has been commenced; but while the latter is pending the proceeding in the former shall be stayed.'

"From the Federal Civil Code:

" 'Art. 9. Against the observance of the law, disuse, custom or practice to the contrary cannot be alleged.'

" 'Art. 20. When a judicial controversy can be decided neither by the text nor the natural meaning or spirit of the law, it must be decided according to the general principles of right, taking into consideration all the circumstances of the case.

" 'Art. 21. In cases of conflict of rights and the absence of express law for the special case, the controversy shall be decided in favor of him who seeks to avoid damages, and not in favor of him who seeks to obtain profit. If the conflict should be between equal rights, or rights of the same specie, it shall be decided by observing the greatest equality possible between the parties.'

" 'Art. 1095. Limitation bars in three years: * * * (8) Civil responsibility for injuries, whether done by word or by writing, and that which arises from damage caused by persons or animals, and which the law imposes upon the representatives of such persons or the owners of the animals.'

"Acts of congress of December 15, 1881:

" 'Art. 1. The executive shall regulate the service of railroads, telegraphs and telephones constructed, or which may in the future be constructed, upon Mexican territory, according to the following basis: (1) Railroads, telegraphs and telephones which in the federal district and territory of Lower California unite together two municipalities, or federal district and territory of Lower California with one or more states; those which communicate two or more states with each other; those which touch any point in the territorial boundary line of the republic and foreign countries, or run parallel therewith within a region of twenty leagues, are known as general lines of communication within the meaning of fraction 22 of article 72 of the constitution. (2) These general lines of communication and their branches shall be subject exclusively to the federal legislature, executive and judicial powers, in their respective spheres, in all cases where any of the following matters are involved: * * * (g) Construction and repair of the works. Crimes committed against the security or integrity of the works or against the operation of the lines. (h) Security of the same works for which the companies, through delays or obstructions, carlessness or fault in the service or for accidents or mishaps in the operation.'

"From the regulations for the construction, maintenance, and operation of railroads:

" 'Art. 52. The coaches and cars which enter into the make-up of a train shall have the draw-heads of the same height, so that their centers will be opposite to each other.

" 'Art. 53. No car of whatever kind shall form a part of the make-up of a train, unless the same shall have been previously inspected very carefully.'

" 'Art. 99. The company shall be responsible for the moving of all trains on its road.'

" 'Art. 184. Companies (railroad) are liable for all faults and accidents which occur through tardiness, negligence, imprudence or want of capacity of their employes.'

" 'Art. 208. All violations of this law which companies (railroad) commit shall be subject to punishment by the administration of a fine up to five hundred dollars, which the department of public works shall assess, reserving always the right of individuals through indemnity and the liabilities which the companies may incur through criminal acts or omissions committed by them.'

"Plaintiffs further allege that by reason of the general statutes of the state of Texas and by virtue of general principles of right and justice and of the laws of Mexico hereinbefore mentioned, they had, and now have, a right of action for their damages against defendant in the republic of Mexico, and the same now exists in said country as well as in the state of Texas and in the United States of America. And they say that the acts of negligence upon the part of the defendant, its agent, servant, and employés, were wrongful and actionable, as has been hereinbefore shown by the plaintiffs, in the republic of Mexico at the time of the killing complained of, and are now so; and they say that the same were then and are now wrongful

and actionable in the United States of America and in the state of Texas. And plaintiffs say that by reason of the negligent killing of the said William H. Slater they have suffered damages in the sum of thirty thousand dollars ($30,000.00). Wherefore, premises considered, plaintiffs pray that defendant be cited to answer this petition, and that they have judgment for their said damages, and that said damages be apportioned among the plaintiffs as they may be found to share therein, and that they have judgment for all costs of suit, and for general and special relief."

The petition was filed on November 17, 1900. On December 4, 1900, the defendant (the plaintiff in error) answered by demurrer in substance as follows: That the petition shows no cause of action: (1) Because it appears that the wrong which resulted in the death of William H. Slater occurred in the republic of Mexico. (2) The laws of Mexico are not similar or analogous to the laws of Texas (designating the points of dissimilarity). (3) It appears that the plaintiffs' right to recover damages in Mexico, if any, depends wholly upon the infraction of a penal statute of the republic of Mexico, which has no extraterritorial effect, and the court has no jurisdiction to determine such matters, or to adjudge damages based upon a penal statute of a foreign government. (4) It does not appear that all the parties authorized under the Mexican law to maintain an action for the recovery of damages are parties to this action. The action is therefore not authorized by the Texas statute, and, if entertained, will subject the defendant to a multiplicity of suits, contrary to the well-established policy of Texas. (5) The laws of Mexico as pleaded are so unlike and dissimilar to the laws of Texas that this court should not undertake to administer the same under the doctrine of national or interstate comity. These demurrers were all overruled. On March 18, 1901, the defendant, by leave of the court, amended its answer, by which it excepted further, and submitted that it affirmatively appears from the plaintiffs' petition that the right of survivors to recover damages for personal injuries resulting in death is alimony or pension, payable in installments, and is therefore so dissimilar from the laws of Texas and the common law that this court cannot administer or enforce said laws and rights. And not waiving its plea to the jurisdiction, but specially urging the same, as well as its general and special exceptions, the defendant pleaded: (1) A general denial; and (2) that the right secured under the laws of Mexico to certain representatives of deceased persons to recover damages, to wit, of surviving husbands, wives, mothers, fathers, and children, is the right of alimony or pension, to be paid monthly and by installments, which right ceases whenever the necessity for alimony or support no longer exists, such as a change of fortune, marriage of the surviving wife and daughters, and when the boys arrive at the age of 21 years; which right and cause of action secured under the laws of Mexico is contrary to the public policy of Texas, as the laws of Texas have provided no remedy for the enforcement of such a right, and the courts, neither in law nor in equity, have power or authority to create a remedy for such enforcement; that the laws of Mexico, as pleaded by the plaintiffs, when construed in connection with other provisions of the Mexican laws securing the right of recovery in surviving wives, mothers, fathers, husbands, and children for personal injuries resulting in death, to wit, articles 211, 212, 213, 214, 217, 221, and 224 of the Civil Code of the federal district, and with articles 1376 and 1377 of the Code of Civil Procedure, the laws of Mexico that govern, secure a right of alimony or in the nature of a pension, and therefore secure a right of recovery unknown to the laws of Texas, and for the enforcement of which no law of Texas or of the United States has been provided, and the court has no jurisdiction to grant the relief prayed. To this amended answer the plaintiffs filed their first supplemental petition, and demurred to the matters pleaded in the defendant's answer, because the same constitute no defense to the cause of action, and especially because the laws referred to relating to alimony and pension, namely, the articles of the Civil Code mentioned, are provisions of the laws of Mexico regulating matters growing out of the marriage relation, and involving the duties and obligations of parties to the marriage

contract and of parents and children; and such provisions do not show a material or substantive difference, or any difference, between the laws of Texas and of the United States and Mexico as to the nature of the right of action claimed by the plaintiffs to exist under the laws of Mexico; nor do such provisions show or tend to show that the laws of Mexico on the subject of damages for injuries resulting in death are contrary to the public policy of Texas or of the United States. And, further, because the provisions of the laws referred to, namely, articles 1376 and 1377, Code of Procedure, relate to a proceeding for the purpose of obtaining a decree for temporary alimony, and in no sense can they be the foundation for a defense to the action. In aid of which exceptions the plaintiffs filed with their replication as Exhibits A and B, and made a part thereof, the following, namely: A translation of chapter IV of Book 1, title V, of the Civil Code of Mexico, which treats of alimony (de los alimentos), which chapter includes the articles mentioned in the amended answer; also a translation of certain articles of chapter 11 of book 111, tit. 1, of Mexico Code of Procedure, relating to temporary alimony, including the articles mentioned in the amended answer.

## "Exhibit A.

### "Chapter IV, of Book 1, Title V—Concerning Alimony.

"Art. 205. The obligation to furnish alimony is reciprocal, the one who furnishes alimony has in his turn the right to demand it.

"Art. 206. Parties to the marriage contract, in addition to the general obligation which the marriage imposes, are bound for alimony in cases of divorce and in other cases provided by law.

"Art. 207. Parents are bound to give alimony to their children. If there be no parents, or they be not able to give alimony, the obligation falls on the other relations on both sides in the nearest ascending grade.

"Art. 208. Children are bound to give alimony to their parents. If there be no children, or if they are not able to give alimony, the nearest relations in the descending grade are bound.

"Art. 209. If there be no relations in the ascending or descending grade, or if they are not able to give alimony, the obligation falls on the brothers and sisters of both parents; on those of the mother alone, if there be none of the father, and on those of the father if there be none of the mother.

"Art. 210. Brothers and sisters are bound to give alimony to their younger brothers and sisters only until they are 18 years of age.

"Art. 211. Alimony comprehends food, clothing, dwelling place and attendance in sickness.

"Art. 212. Respecting minors, alimony includes in addition, the expenses necessary for the primary education of the dependent, and to prepare him for some occupation, art or profession, honest and suitable to his sex and personal circumstances.

"Art. 213. The one bound to supply alimony fulfills his obligation by assigning a pension sufficient to support the dependent, or by taking him into his family.

"Art. 214. Alimony should be in proportion to the estate of the one bound, and to the necessities of the one who receives it.

"Art. 215. If the obligations to receive alimony falls upon several, and all are able to give, the judge shall apportion the amount among them according to their means.

"Art. 216. If only some of these are able, the amount of alimony shall be apportioned among them; and if one only shall have the means he alone shall comply with the obligation.

"Art. 217. The obligation of supplying alimony does not include that of endowing the children, nor that of providing them with capital to prosecute the business, art or profession for which they may have been fitted.

"Art. 218. The right to demand that alimony be made secure exists in favor of: I. The person entitled to alimony. II. The relative in ascending grade who may have him (the person entitled thereto) under his parental control. III. The guardian. IV. The brothers and sisters. V. The public department.

"Art. 219. If the person who demands security of alimony in the name of the minor, cannot and does not wish to represent him in court, the judge shall appoint a temporary guardian.

"Art. 220. The security may consist of a mortgage, bond or deposit of an amount sufficient to cover the alimony.

"Art. 221. The temporary guardian shall give security for the annual value of the alimony. If he should control any fund designated for that purpose he must give legal security for it.

"Art. 222. Where the father enjoys the use of the property of the child, the value of the alimony shall be deducted from it (the income) if it is sufficient to cover it (the alimony). On the contrary, where the income is not sufficient the difference shall be (a charge) on account of the father.

"Art. 223. If the necessity of the dependent proceeds from bad conduct, the judge, having knowledge of the cause, may diminish the sum fixed as alimony, placing the one at fault, if necessary, under care of competent authority.

"Art. 224. The obligation to supply alimony ceases: I. When the one bound lacks the means of compliance. II. When the dependent is no longer in need of alimony.

"Art. 225. The right to receive alimony cannot be renounced, nor can it be subject to compromise between the parties."

"Exhibit B.

"Chapter 11, of Book 111, Title 1—Civil Procedure—Temporary Alimony.

"Art. 1372. In order to decree temporary alimony to one who has the right to exact it, it is necessary: I. To make complete proof of the right under which it is asked. II. To prove proximately at least, the means of the one who should give alimony. III. To make sufficient proof of the urgent necessity for temporary alimony.

"Art. 1373. The proof required under paragraph 1 of the preceding article shall be the last will, the contract or executory instrument which contains the obligation to give alimony; the contract will have to be in form of a public writing.

"Art. 1374. When alimony is asked on the ground of consanguinity, the documents should be presented which prove the interested party to be within the cases provided in articles 207 to 210 and 3324 and articles of the Civil Code relating thereto.

"Art. 1375. When husband or wife asks alimony, the act or certificate of marriage must be presented.

"Art. 1376. After compliance with the provisions of the preceding articles, the judge, if he believes the right has been established, shall designate the amount of alimony and shall adjudge it, directing it to be secured months in advance in all cases.

"Art. 1377. Immediately on adjudging temporary alimony, the first monthly payment shall be exacted of the one liable for it." The counsel for the respective parties agreed in open court as follows: "It is agreed by counsel upon both sides that the translation of the laws of Mexico, as set up in plaintiffs' petition, and which translations are herewith filed, and marked Exhibits 'A' and 'B,' for identification with the records in this case, are correct translations of the laws they purport to be translations of, taken from the respective codes in said petition mentioned. And it is further agreed that the laws described in defendant's original answer and plaintiffs' supplemental petition are the laws of Mexico, having application to this case." Thereupon the court overruled the demurrer of the defendant, and sustained the demurrers of the plaintiffs, to which ruling the defendant duly excepted. The trial proceeded, and, after the evidence, including proof of the laws of Mexico had been closed, the judge, on his own motion, charged the jury in part as follows: "The damages, then, must be measured by the pecuniary—money—injury to the respective plaintiffs. * * * In cases of this kind the damages * * * must be measured by the pecuniary standard,—that is, the money value, of the life of the deceased to the surviving wife and children; and the jury, acting upon their sound and deliberate judgment, based upon facts and circumstances in evidence, and

their knowledge, experience, and sense of justice, may give such damages to the plaintiffs as they may think proportionate to the injury resulting to them from the death of the deceased. See Railway Co. v. Lehmberg, **75** Tex. 67, 69, 12 S. W. 838." The jury returned the following verdict: "We, the jury, find in favor of the plaintiffs, and assess their damages at seven ($7,000) thousand dollars. Of the amount of damages so found we award to the plaintiff Lena M. Slater the sum of $2,691.00, to the plaintiff William F. Slater $453.00, to plaintiff Jesse R. Slater $717.00, to plaintiff Annie E. Slater $1,346.00, to plaintiff Henry G. Slater $1,793.00;" on which it was "ordered, adjudged, and decreed by the court that the plaintiffs do have and recover of and from the defendant, the Mexican National Railroad Company, the full sum of seven thousand dollars, with interest thereon from this date at the rate of six (6) per cent. per annum. It is further ordered, adjudged, and decreed by the court that of the said sum of seven thousand dollars the plaintiff Lena M. Slater do have and recover the sum of two thousand six hundred and ninety-one dollars ($2,691.00), the plaintiff William F. Slater the sum of four hundred and fifty-three dollars ($453.00), the plaintiff Jesse R. Slater the sum of seven hundred and seventeen dollars ($717.00), the plaintiff Annie E. Slater one thousand three hundred and forty-six dollars ($1,346), and the plaintiff Henry G. Slater one thousand seven hundred and ninety-three dollars ($1,793.00), with interest on the said sums, respectively, from this day, at the rate of six (6) per cent. per annum."

Thos. W. Dodd and Leroy G. Denman, for plaintiff in error.

C. A. Keller and E. A. Atlee, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The grounds of the defendant's demurrers and of its special plea are these: (1) That the death occurred in the republic of Mexico, and not within the jurisdiction of the circuit court. (2) That under the Mexican laws the parties who may prosecute the suit are different from the parties who may prosecute a like suit in the state of Texas, and that the laws of Mexico pleaded and relied upon by the plaintiffs are so far different in other particulars from the laws of Texas as to put the case outside of the jurisdiction of the circuit court. (3) That the right of the plaintiffs to recover depends solely upon the construction of a penal statute of Mexico, which has no extraterritorial effect. (4) That under the laws of Mexico the right of survivors to recover damages for personal injuries resulting in death is alimony or pension, payable in installments, and is therefore so dissimilar from the laws of Texas or the common law that this court cannot administer or enforce those laws and the plaintiffs' rights thereunder. The parties to this suit are citizens of the United States, and all of the plaintiffs are citizens of Texas, and inhabitants of the district in which the suit was brought, while the sole defendant is a corporation organized under the laws of the state of Colorado, and has constructed and operates a line of railroad to the city of Laredo, in the district and at a point where the circuit court is held, and where also the defendant has a duly authorized and recognized agent upon whom process may be served; and the defendant, being thus an inhabitant of the district, has duly appeared.

The statutes of Mexico creating the plaintiffs' right place the acts and omissions charged against the defendant to support their claim of

right in the class of negligent crimes; but it cannot be contended that the act belongs to that class of criminal laws which can only be enforced by the courts of the country where the offense was committed, for it gives a civil action to recover damages for a civil injury. It is such an injury as would not have supported an action at common law, for it was early held, and has become settled law, that at common law the death of a human being could not be complained of as an injury in a civil court. As the right to compensation in such cases is one of recent creation, it is dependent solely upon the statute of the country where the injury is inflicted from which the death results. But when an act is done for which the law says the person shall be liable, and the action by which the remedy is to be enforced is a personal, and not a real, action, and is of that character which the law recognizes as transitory, and not local, the wrongdoer may be held liable in any court to whose jurisdiction he can be subjected by personal process or by voluntary appearance. Wherever, by either common law or the statute law of the country, a right of action has become fixed, and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties. Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439. We have seen that the foreign law here involved does not belong to the class of criminal laws which can only be enforced by the courts of the foreign country. The right created by those laws is not contrary to the public policy in the state of Texas, in which state the circuit court to which this writ of error issued is held. Rev. St. Tex. 1895, arts. 3017, 3027. It is not contrary to abstract justice, or to pure morals, nor calculated to injure the state of Texas or the United States or their citizens. We have already shown that the circuit court has jurisdiction of all of the parties to this action.

What we have said sufficiently disposes of the first and third of the grounds of error as stated in the opening of this opinion. The first clause of the second ground becomes immaterial in view of our conclusion as to the fourth ground, which substantially includes the last clause of the second, and hence there remains for discussion only the fourth ground of error, assigned as numbered in our opening statement. On the subject of jurisdiction, therefore, it remains to inquire only whether, consistently with our own forms of procedure and law of trials, we can do substantial justice between the parties. From the nature of our system of national judicature, and from the nature of the case, there is no general law or statute of the United States prescribing the forms of procedure and the law of the trial in such cases in the circuit court other than the statute which requires that the forms and modes of procedure in civil causes in the circuit court shall conform as nearly as may be to the forms and modes of procedure existing at the time in like cases in the courts of record of the state within in which the circuit court is held. Rev. St. § 914. As we have seen, "in cases of other than penal actions, the foreign law, if not contrary to our public policy, or to abstract justice, or pure morals, or calculated to injure the state or its citizens, shall be recognized and enforced here, if we have jurisdiction of all necessary parties, and if we can

see that, consistently with our own forms of procedure and law of trials, we can do substantial justice between the parties. If the foreign law is a penal statute, or if it offends our own policy, or is repugnant to justice or to good morals, or is calculated to injure the state or its citizens, or if we have not jurisdiction of the parties who must be brought in to enable us to give a statutory remedy, or if, under our forms of procedure, an action here cannot give a substantial remedy, we are at liberty to decline jurisdiction." Higgins v. Railroad Co., 155 Mass. 176, 180, 29 N. E. 534, 535, 31 Am. St. Rep. 544, quoted with approval in Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123. We must, therefore, look somewhat closely to the Texas law and practice thereunder preparatory to a comparison of that law with the laws of Mexico, to determine whether the circuit court, in an action at law, can give a substantial remedy and do substantial justice between the parties in this cause.

Article 3027 of the Revised Statutes of Texas of 1895 provides:

"The jury may give such damages as they may think proportioned to the injury resulting from such death, and the amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict."

The learned judge of the circuit court who presided on the trial of this case sat in the case of Hall v. Railroad Co., 39 Fed. 21, and in his instruction to the jury in that case stated the Texas law thus:

"It is necessary for the plaintiff, in cases of this kind, to show a damage of a pecuniary nature. Yet such damages are not to be given merely in reference to the loss of a legal right, but may be calculated with reference to the reasonble expectation which the plaintiff had, resulting from his condition, and the disposition and ability of his son, during his life, to bestow upon him pecuniary benefit as of right, or in obedience to the dictates of filial duty without legal claim."

In Railway Co. v. Lehmberg, 75 Tex. 67, 68, 12 S. W. 838, 840, which the trial judge cites in his charge in the instant case, we find the Texas law announced thus:

"While the law does not, in this character of action, intend to give compensation for anything but pecuniary loss by estimating the money value of the life of the relative; and while it necessarily results that regard must in each instance be paid to such facts and conditions as cast light upon the subject, it yet must be admitted that the inquiry is not intended to be narrowed down by the law to a result that can be exactly accounted for by the facts in evidence. Every parent and husband has for his wife and children a pecuniary value beyond the amount of his earnings by his labor or vocation. That value may to some, but not to every, extent be susceptible of allegation and proof, and to the extent that it can be alleged and proved it ought to be done. The difficulties of proof are known to the lawmaker. In some states an attempt has been made to remove them to some extent by placing limits to the amount that may be recovered. In establishing such rules the idea of making compensation in each instance for the pecuniary value of the lost life is necessarily abandoned. When no amount is fixed by law, and no rule is prescribed for making the calculation upon facts capable of exact ascertainment, it necessarily follows, we think, that the lawmaker intended that, having reference as far as practicable to conditions existing at the time of the death, juries from their own knowledge, experience, and sense of justice should fix and assess the proper sum."

In an earlier case (Railroad Co. v. Kuehn, 70 Tex. 582, 8 S. W. 484), it is said at page 587, 70 Tex., page 485, 8 S. W.: "That pending the suit the widow married again does not preclude her right of action." And in Railway Co. v. Younger, 90 Tex. 387, 38 S. W. 1121, on certified questions duly propounded to the supreme court to obtain its rulings on the points stated, that court answered: "To the first question we answer that evidence of the marriage of plaintiff, Younger, after the death of his wife, on account of which he sought to recover damages, was properly rejected by the court." And in the argument in the opinion it is stated: "If the plaintiff's wife was killed through the negligence of the defendant, he then lost the value of her life as a wife; and the fact that her place has been supplied by a subsequent marriage does not in any manner operate to mitigate the damages for which the wrongdoer was responsible."

Looking only to the sections of the statutes put in evidence, we see that the civil liability imposed by the Mexican law obliges the wrongdoer to indemnify the injured party "for the violation of a right which is 'formal, existing, and not simply possible,' and this imports the payment of damages; that is, of that which the injured party fails to enjoy as a direct and immediate consequence of an act or omission by which a formal, existing, and not merely possible right is attacked." Arts. 301, 304, 305, Pen. Code, bk. 2, "Civil Liability in Criminal Matters." "The civil responsibility that grows out of a homicide done without right (or justification) comprehends * * * the support not only of the widow, descendants and ascendants of the deceased, who were being supported by him, he being under legal obligations to do so, but also the posthumous descendants that he may leave. The obligation to furnish support shall last during all the time that the deceased might have lived if the homicide had not killed him, and that time shall be calculated by the judges according to the table at the end of this chapter, but taking into consideration the state of the health of the deceased before the homicide was committed. As limitation of this rule, the obligation shall cease, (1) at whatever time it shall not be absolutely necessary for the subsistence of those entitled to receive it; (2) when those beneficiaries get married; (3) when the minor children become of age; (4) in any other case in which, according to law, the deceased, if alive, would not be required to continue the support." Articles 318, 319, Id. The articles of the statute law of Mexico put in evidence in this case appear to stand together, and, though taken from different books and different chapters of the laws as passed and published, to have a direct relation to the same general subject, and to define and limit the rights which they create. Counsel for the plaintiff in error contend that the general and special demurrers and exceptions to the respective pleadings of the parties necessarily involve and require: (1) The proper construction of the laws of Mexico touching the nature of the right and damages secured to surviving widows and children; (2) the power and authority of the circuit courts of the United States to administer these laws and enforce the right secured by them to the plaintiffs; and, (3), as practically preliminary to the other two, the manner of proving and construing the laws of a foreign country. The law of Mexico being that of a for-

eign country, of which our courts do not take judicial notice, could only be proved as a fact, and, if not proved in the trial court, cannot be taken judicial notice of by this court on this writ of error. Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123. The plaintiff in error contends that under the agreement of counsel the translations of the statutes as set out in the plaintiffs' petition and in Exhibits A and B, constituting, as it does, all of the testimony in relation to the laws of Mexico which was admitted by the trial judge, in no manner negatives or tends to negative the existence of other written or unwritten laws of Mexico having application to the issues in this case, and that, in further proof of the laws of Mexico as practically construed and enforced in that republic, it tendered the testimony of Emilio Velasco, a man learned in the laws of Mexico, taken by deposition, duly verified and authenticated and returned into court, which testimony was as follows:

"(1) That the said Emilio Velasco was a native citizen of Mexico. (2) That he was a lawyer in Mexico by profession, and had been since January, 1860. (3) That he was a graduate of the Law School of the City of Mexico, graduating in January, 1860. (4) That he was familiar with the laws of Mexico and the states of Nueva Leon and Tamaulipas in force now and that were in force for two years past, touching the right of the surviving wife and children to recover damages for personal injuries resulting in the death of the husband and father. (6) That the right in a surviving wife and children in a civil suit for damages, where no criminal proceedings had been had, and defendant had been absolved, it was necessary, as a precedent to a recovery, that the court trying the civil cause find that the killing or injury was a crime as defined by the Penal Code. (7) That the right was in the nature of alimony or pension to be paid in installments monthly for periods of time fixed by the court. That obligation to pay alimony to the wife and children does not imply that of giving a sum larger or smaller at once, but of giving a pension. Alimony comprises meals, dress, habitation, and assistance in case of sickness; and, as regards minors, besides the necessary expenses for the education of the party supported, and for furnishing him a trade, art, or profession, honest and suitable to sex and personal circumstances. (8) That the party obliged to give alimony complies with this obligation by assigning a competent pension, or by incorporating him into his family. (9) That the obligation to furnish alimony or support as a consequence of civil responsibility lasts all the time that the deceased ought to have lived, calculating the time according to the table of probabilities, which is a continuance of article 325 of the Penal Code, bearing in mind, however, the condition of the health of the deceased; but that this obligation would cease at any time when it is not absolutely necessary to the subsistence of the parties who receive it. Therefore the obligation ceases from the moment in which the condition of fortune of the parties who receive alimony vary allowing them to subsist without the necessity of the alimony. It ceases with the wife and daughter when they marry, and with sons when they become twenty-one years of age; and it ceases when circumstances are produced that, according to law, the obligation of giving would have ceased on part of deceased if he had lived. (10) That civil responsibility is based upon infraction of the Penal Code. It is the infraction of the Penal Code that gives or engenders civil responsibility. (11) In case the injured party has contributed to the deed, or fault, or negligence, or to the omissions which caused the injury, he is co-author of the offense or fault, and his representatives cannot recover. (12) That the wife and children have no right to any indemnification against a railway company on account of injuries from which resulted the death of the husband or father when the accident in which the said injury occurred was caused by the fault or negligence or omission of the one who suffered the injury,

or if he contributed in any way with his fault, negligence, or omission to the accident."

To the reading of this deposition counsel for the plaintiffs (the defendants in error) objected on the ground that the statutory law of Mexico as pleaded is best proved by the statutes themselves, and that, the statutes having been offered in evidence, the deposition of witnesses as to what is the law is inadmissible, which objection the court sustained, and the defendant duly excepted. Counsel for the plaintiff in error contend that this ruling assumes that the statutory law of Mexico is all of the law in cases of the character of the action at bar affecting the right of recovery, in that it assumes that it is incompetent to offer testimony of one learned in the laws of a foreign country as to what the law is, whether written or unwritten; and that it assumes that it is incompetent to offer testimony in the nature of expert evidence as to the proper construction of a statute of a foreign country and written in a foreign tongue. Undoubtedly, the usual and better mode of authenticating foreign written laws is by a copy proved to be a true copy. But unwritten laws must ordinarily be proved by parol evidence. Greenl. Ev. § 488. Counsel further insist that the trial court, in admitting only the copies of the certain statutes offered, and refusing the aid of parol evidence, fell into a mistake as to the laws of Mexico which determined the rights of the plaintiffs and the defendants in this case. In support of this contention they refer to the instruction of the trial judge to the jury, in which he uses this language:

"In cases of this kind the damages are measured solely by the pecuniary injury to which the respective parties are entitled, including the loss of prospective damages."

And this language he reiterated as follows:

"In cases of this kind the damages, as before stated, must be measured by the pecuniary standard,—that is, the money value of the life of the deceased to the surviving wife and children; and the jury, acting upon their sound and deliberate judgment, based upon facts and circumstances in evidence and their knowledge, experience, and sense of justice, may give such damages to the plaintiffs as they may think proportionate to the injury resulting to them from the death of the deceased."

A most eminent text writer, in a work of standard authority, has said:

"No tribunal on earth, however learned, could hope by any degree of diligence to master the laws and processes and remedies of all other nations, and the qualifications and limitations properly belonging thereto."

The same writer has said:

"In regard to the merits and rights involved in actions, the law of the place where they originated is to govern. But the forms of remedies and the order of judicial proceedings are to be according to the law of the place where the action is instituted, without any regard to the domicile of the parties, the origin of the right, or the country of the act." And, again: "There are many questions, however, which may arise as to what are and what are not matters properly belonging to the remedy, and what are and what are not matters properly belonging to the merits. Many cases of this sort may be found collected and discussed by foreign jurists upon the peculiarities of their own jurisprudence. But they could not be made intelligible to a lawyer under the common law without occupying a space in

explanations wholly disproportionate to their importance in a treatise like the present." Story, Confl. Laws, §§ 557, 558, 563.

The statutes of Mexico were conceived and are expressed in the Spanish language, which is the vernacular tongue in Mexico. They are addressed to those having full knowledge of the Spanish idiom. They are addressed also to persons instructed in or charged with a knowledge of the unwritten laws, customs, and usages of that people; and, like the cases referred to by Mr. Story which could not be made intelligible to a lawyer under the common law, without laborious explanations, these statutes, thus conceived and addressed, while they must be construed by whatever court is charged with the duty of executing them, may be more rightly and safely construed with the aid of the testimony of competent witnesses instructed in these laws, customs, and usages, the idiom of the language, and the unreported decisions of their enlightened domestic courts, which, we are informed, do not accompany their decisions by the announcement of judicial opinions, if they are not, as is probably the case, forbidden by law to do so. The deposition of the witness having been offered to prove as a fact the law of the foreign country, was addressed to the judge to aid him in his rulings during the progress of the trial, and in giving his instruction to the jury; and, if he erroneously refused to receive and consider it, it is still such proof of the foreign law offered in the trial court that it can be taken judicial notice of by this court on writ of error. Without the aid of this testimony, we would find it difficult to construe the limitations expressed in the latter part of article 319, above quoted, and especially the second one of those limitations; and while we probably would, from the nature of the case, and from a careful consideration of the statutes pleaded and proved, have reached the conclusion that limitation 2 must relate to female beneficiaries, whether minors or not, and that limitation 3 relates to minor children of the male sex, we should have felt the need of the further proof which is offered to be supplied by the deposition of the learned Mexican lawyer. We conclude that the learned trial judge erred in sustaining the objection to the introduction of this proof, and, for the reason already given, we will take judicial notice of it on this writ of error. Without requoting here or attempting further to analyze the provisions of the statute law of Mexico set out in the statement of the case and to some extent considered in the foregoing part of this opinion, it appears clear to us from a careful comparison of the different sections of the statute and a careful consideration of the deposition of the Mexican lawyer that the right created by the Mexican laws is the right to a continuing support during the periods of time that support would have been due from the deceased, and in the amount that it would have been due, proportioned to his ability to give it and the necessities of those who had the right to receive it. Any judgment that may be rendered against the defendant must as studiously respect and enforce its right as it does the rights of the plaintiffs. Limitations placed on the right of the plaintiff are for the protection and just treatment of the party bound. The provisions of the Mexican law which we are considering seem to regard and relate to

not only the paramount interest of the individual parties to the transactions, liabilities, and reparations, but also to the interest of the public in having the support due to the beneficiaries so extended that it will continue through the period for which it is provided. The provisions of the Mexican statute on this subject have in view the declaring and conserving the interest of Mexican citizens; and where, as in this particular case, the beneficiaries are citizens of the United States, our laws, state and national, as administered in our courts, may be deemed adequate to authorize and secure the preservation of the rights of the beneficiaries and the protection of the interest of the public, and may yet be not adequate to the due enforcement of the limitations put upon the plaintiff's right for the just protection of the party charged. Possibly in the Texas state courts, where the distinction between law and equity does not exist, or at equity in the courts of the United States, a decree might be passed fixing the liability of the defendant, and retaining control of the parties to the suit and of the subject-matter so as to enforce that liability, with the limitations provided in the interest of the defendant. It is difficult to conceive what judgment at law the circuit court could render that would protect that interest of the defendant in the limitations put by the Mexican law on the plaintiff's right. It may be that, under our system of judicature, the jury, taking the place of the judges in the Mexican system, might, under proper instructions, on full proof, and aided, as Mexican trial judges are aided, by their own experience and knowledge of affairs, be able fairly and justly to assess in a lump sum the value of the right secured to the male beneficiaries (the case before us does not require that question to be decided now, and on it we express no opinion); but if in a case where only male beneficiaries are parties there may be no insuperable difficulty in the way of our enforcement of the right secured by the Mexican law, it is difficult to conceive how the most learned trial judge could instruct a jury so as to enable them, on any possible condition of proof, to fix a present sum which would give female beneficiaries their due, and give them only their due. Before the fact of their marriage shall have occurred, on what basis established by law or by human experience can the proximate date when those beneficiaries will get married be fixed by the jury, or by any other human intelligence? The Texas law provides that "an action for actual damages on account of injuries causing the death of any person may be brought by all of the parties entitled thereto, or by any one or more of them for the benefit of all." Rev. St. 1895, arts. 3017, 3022. It is clear, therefore, that the rights of all entitled to damages on account of injuries causing the death of any person must be considered and settled in one action against the wrongdoer, and that in the case where some of the beneficiaries are males and some of them females the same difficulty is presented as occurs in a case where female beneficiaries alone are interested and are parties plaintiff. The learned and distinguished counsel who appeared in this court for the defendants in error, and who submitted an oral argument and a printed brief, presents in his second proposition in his printed brief "that conditions which may arise,

115 F.—39

and under which, according to the law of Mexico, civil liabilities for damages for injuries resulting in death will cease, may constitute defensive matter, the effect of which is to bar the remedy rather than to extinguish the right of action. But no such contingencies have been pleaded. The court is not called upon to construe the law relating thereto." This proposition, in our opinion, is not sound. The limitations we have been considering relating to the female beneficiaries directly affect the plaintiffs' right, and are not merely defensive matter to be availed of by the one bound after the marriage of the female beneficiaries shall have occurred.

We therefore conclude that the right of the survivors (the plaintiffs) to recover damages for personal injuries resulting in the death of William H. Slater is alimony, or pension, payable in installments for uncertain and indeterminate periods, dependent upon conduct of beneficiaries and conditions impossible to forecast, and is therefore so dissimilar from the laws of Texas and the common law that the circuit court in an action at law cannot administer the same and enforce the rights of the plaintiffs so as to do substantial justice between the parties.

It is unnecessary to notice any of the other questions presented by the assignment of errors. The view we have taken of the case requires that the judgment of the circuit court shall be reversed, and the cause remanded, with direction to that court to sustain special exception No. 2, filed by the defendant on March 18, 1901, and to dismiss the plaintiffs' action.