11767, 11768.    CLEMONS *et al.* v. PAYNE, director-general
(two cases).

1. A carrier violating the act of congress which prohibits the transportation of spirituous or intoxicating liquor from one State to another State when the law of the latter State makes it penal to sell or possess such liquor cannot collect any freight-charge for the transportation; and this is true although the carrier, when receiving and transporting the shipment, was wholly ignorant that it was intoxicating or spirituous liquor.
2. Where packages containing whisky and marked and described as " roofing pitch " are delivered by consignor in Ohio and Kentucky to a car-

rier, to be transported to named consignees in Georgia, and their real character is fully concealed from the carrier, and they are received and transported by the carrier without knowledge of their contents and without any circumstance that would put the carrier on notice or inquiry as to their real character, the right to sue for and recover the rate of freight for roofing pitch would arise.

3. When the carrier in question was, at the time of the shipments, operated by the United States Government through an .officer called "Director-General of Railroads," suits for the freight were properly brought in the name of that official against the party or parties, whether consignor or consignee or both, who procured the transportation to be made.

DECIDED JANUARY 20, 1921.

Complaint; from city court of Macon — Judge Guerry. July 24, 1920.

Petitions in the name of Walker D. Hines, as director-general of the United States Railroad Administration, were filed on January 19, 1920, alleging that the defendants, on or about the first day of October, 1918, entered into an agreement among themselves to ship, in the names of the designated consignors, from named points without the State of Georgia to named consignors at Macon, Georgia, by common carriers, intoxicating liquors, packing the same in barrels so that they would appear to be roofing pitch; that subsequently, in compliance with this agreement, divers quantities of whisky were so shipped, the shipments being described; that prior to delivery the said shipments were seized by officers of the law; and these actions were brought for the freight charges thereon. The petitions were amended so as to set forth the freight rates on whisky in glass and also on roofing pitch, and to allege that the plaintiff had no knowledge of the fact that the shipments were not roofing pitch, and that the whisky was packed in the center of the barrels and roofing pitch poured over it so as to completely surround, cover, and conceal it.

The petitions were demurred to on the ground that they did not set forth a cause of action; that the facts alleged did not make the defendants liable either as individuals or as partners; that there was no allegation that the consignee was the agent of the defendants; that the plaintiff had no right to institute and maintain these suits, for the reason that the money and property sought to be recovered was money and property of the United States government, and not money and property of the plaintiff; and that the petitions showed on their faces that they were for the recovery

of freight charges on shipments of liquors prohibited by law from being shipped. The demurrers were overruled and the defendants excepted.

*R. L Berner, Walter De Fore, J. C. Estes,* for plaintiffs in error. *Harris, Harris & Witman, Miller & Garrett,* contra.

HILL, J. 1. (After stating the foregoing facts.) The principal point to be decided by this court is whether the common carrier, under the allegations of the petitions, had the right to recover the freight, and, if so, whether this right was to recover freight for the transportation of whisky, or freight for the transportation of roofing pitch. The trial court overruled the demurrers generally, and this court might well content itself with merely affirming this judgment. But in order that the issues may be simplified and litigation more speedily ended, we deem it not improper to go further and decide specifically whether the right of the common carrier is to recover the rate on whisky or the rate on " roofing pitch."

Two elementary principles are involved: one, in furtherance of public justice, which denies the right of the common carrier to recover where to do so will violate a public law; and the other in the interest of personal honesty, which forbids any person to take advantage of his own wrong. The act of Congress prohibits the transportation of liquors by interstate carriers into a State where the sale is prohibited. Fed. Stat. Ann., Supp. 1914, p. 208, U. S. Comp. St. 8739. Stripped of immaterial verbiage, this act provides " that the shipment or transportation in any manner or by any means whatsoever of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind from one State . . into any other State, . . which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold or in any manner used, either in the original package or otherwise, in violation of any law of such State, is hereby prohibited. " While this statute carries with it no penalty for its violation, the transportation of the liquors named in interstate commerce is positively prohibited, and this inhibition is sufficient for the purpose of making violation of the act illegal. Civil Code (1910), § 4251; *Howell* v. *Fountain, 3 Ga.* 176 (46 Am. Dec. 415) ; Clark on Contracts, 491. In our opinion, under this statute it is wholly im-

material whether the carrier had knowledge that it was being violated by the transportation. A law made in furtherance of public justice, in order to make effective the public policy of the State, cannot be violated either with or without knowledge of its terms. No contract in violation of a public law which forbids such a contract to be made, in the interest of the government or State, can legally be violated; and if it is violated in fact, the intent of either party to violate it is immaterial. Of course, it cannot be doubted that no valid contract can be made by an interstate carrier knowingly in violation of the express terms of the above-quoted statute. The essential fact is that the act made penal, or expressly prohibited, entered into and constituted the matter of the contract in question. Any contract by a common carrier and a shipper in violation of the express terms of the United States statute above quoted *is illegal and absolutely void*, and neither party can take any advantage under such a contract; and this is true whether the contract is expressed or implied and whether it is a fraud perpetrated on the common carrier by the shipper or not. *Hill* v. *Mitchell, 25 Ga. 704.* We conclude, therefore, that the counts of the petition of the common carrier in the present cases, which undertook to recover the rate of freight allowed for the transportation of whisky cannot, under the allegations of the petitions, be recovered, because to permit the recovery would not only be violative of the terms of the statute, but would open the way to the perpetration of frauds in violation of the statutes of the State prohibiting the possession of whisky for any purpose.

2. We think, however, that the plaintiff would have the right to recover the rate of freight for the transportation of " roofing pitch. " The contract was for the transportation of roofing pitch. The common carrier undertook to transport this substance to the consignee. If the freight had been lost in transportation, the shipper or consignee, under the allegations of these petitions, would have been estopped from denying the character of the shipment transported. The carrier executed the contract, or at least completed it so far as permitted to do so. The defendants made the shipments with the knowledge that they were perpetrating a fraud on the common carrier and were violating the law. The common carrier, without the slightest knowledge of the perpetra-

tion of such fraud, undertook, in good faith, to make the transportation of roofing pitch. It would be contrary to the fundamental principles of right and justice to permit the defendants to benefit by their own wrong and to obtain the services of the common carrier without remuneration. " Where one of the parties intends a contract, innocent in itself, to further an illegal purpose, and the other enters into the contract in ignorance of his intention, the innocent party is entitled to the full benefits under the contract." Clark on Contracts (2 ed.), 331. The plaintiffs in error admit their own fraud in deceiving the carrier as to the illegal character of the shipment, and they now insist that the innocent party should be penalized. In Bigelow on Fraud, 200, it is stated: " As a general rule a party cannot set up his own fraud as a ground upon which to rest his action or defense." In the apt language of counsel for the defendant in error, a man must come into court with clean hands. He will not be heard in a court of justice to allege and set up his own wrong. As was said by Judge Nisbet, " The defendant comes into court with a miserable grace alleging his own violation of law or public morality. " " Only in rare cases is he heard, and then only when his equity screams to Heaven. " As declared by Judge Story: " It is manifestly a result of natural justice that a party ought not to be permitted to avail himself of any agreement, deed, or other instrument procured by his own actual or constructive fraud, or by his own violation of a legal duty or public policy, to the prejudice of an innocent party. " 2 Story's Eq. Jur. § 695; *Adams* v. *Barrett,* 5 *Ga.* 410. True, it is a well-established principle of law that where representations are made by the consignor or shipper that the goods are one thing when in fact they are another, the carrier may collect the proper rate. This is true only when the proper rate on the actual shipment, under the circumstances surrounding the transportation, can be lawfully collected by the carrier. In other words, the carrier is entitled to collect the actual rate for the actual shipment before the goods are delivered to the consignee at the place of destination, or may hold the shipment until the additional charges are paid, but certainly this would not give the right to the carrier to collect the rate on a shipment which it could not lawfully make. As the petitions alleged that there was an agreement or conspiracy on the part of

the defendants to commit this fraud in the shipment, we are of the opinion that the carrier, under the allegations of the petitions, would have the right to recover the rate of freight for the shipment of roofing pitch, although, as a matter of fact, the shipments were whisky, and, for this purpose, to file suit against the parties participating in the fraud.

3. The plaintiffs in error insist that the suits should have been brought in the name of the United States, as the United States was operating the railroads at the time of shipment. We do not think this position is sound. The allegations of the petitions as originally filed and as subsequently amended showed that the road in question was operated for the United States by the director-general of railroads of the United States. This official, in our opinion, was the proper party plaintiff to bring the suits for the recovery of the freight in question.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*